**UNITED STATES, Appellee,**

**v.**

**Roy GRAY, Defendant–Appellant.**

**No. 94–1298.**

United States Court of Appeals, First Circuit.

Heard April 5, 1995.

Decided Aug. 16, 1995.

---

Jamie Ann Sabino, with whom Klibaner and Sabino, Cambridge, MA, was on brief, for appellant.

Roberta T. Brown, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty. and Thomas C. Frongillo, Asst. U.S. Atty., Boston, MA, were on brief, for appellee.

Before TORRUELLA, Chief Judge, CYR and STAHL, Circuit Judges.

TORRUELLA, Chief Judge.

Appellant Roy Gray challenges the district court's denial of his motion to withdraw his plea of guilty to charges of conspiracy to distribute cocaine and distribution of cocaine. Because we find that Gray reasonably misunderstood the consequences of his guilty plea, we remand to the district court for further proceedings.

## BACKGROUND

On January 20, 1993, a federal grand jury returned an indictment charging Gray with one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846, and one count of distribution of cocaine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, respectively. Gray was arrested on April 8, 1993, and pled not guilty at his arraignment. On October 18, 1993, the scheduled trial date, Gray changed his plea to guilty as to both charges.

At his change of plea hearing, the court asked Gray a series of questions pursuant to Fed.R.Crim.P. 11. In response to these questions, Gray stated that he had attended school through the "eighth or ninth grade;" he denied taking any medicine, drugs, or alcohol on the day of the hearing, and stated that he had not been treated recently for any mental condition or mental illness. Gray also stated that he had no trouble understanding the court's questions.

The court advised Gray of his rights in specific detail, and informed him that he would waive these rights when he pled guilty. Gray stated that he understood his rights as they had been explained, that he understood that by pleading guilty he would lose those rights, and that he gave up those rights freely and voluntarily.

The government then summarized the evidence that it would have offered if Gray's case had gone to trial, and the court explained the nature of the charges.

The court asked Gray if he was entering his guilty plea freely and voluntarily, to which Gray answered yes. With respect to Gray's possible sentence, the following colloquy took place:

COURT: Do you believe it is in your best interest to enter a plea of guilty at this time?

GRAY: Yes, your Honor. The reason why I am pleading guilty is like: Take it to trial and let the jury and the tape with me on the tape talking, I don't stand no chance. I'd rather plead out, your Honor.

COURT: So you believe then, in the light of the evidence on the tapes and otherwise, that it is in your best interest to plead guilty even if you have some feelings about what you were really doing at the time, what was really going on at the time, is that right, sir?

GRAY: Yes, sir. And I rather plea.

COURT: Well, with that understanding in mind, do you still enter your plea freely and voluntarily?

GRAY: Yes, your Honor.

COURT: Do you understand what the maximum punishment can be?

GRAY: Not exactly, your Honor.

COURT: The maximum punishment is ten years to life.

GRAY: Yes, your Honor.

COURT: And a fine of up to $4 million dollars—$8 million?

GRAY: Yes, your Honor.

COURT: And a special assessment of $50 on each count, do you understand?

GRAY: Yes, your Honor.

COURT: Do you understand the matter of your sentence is up to me?

GRAY: Yes, your Honor.

COURT: That I am not bound by the agreement that you have reached with the government?

GRAY: Yes, your Honor.

COURT: And, also, do you understand, sir, that you might be subject to deportation?

GRAY: Yes, your Honor.

The court subsequently found that: 1) Gray's plea was made freely and voluntarily; 2) Gray understood the nature of the charges against him and the nature and consequences of his plea; 3) Gray was competent to enter his plea; 4) Gray understood his rights, and had freely and voluntarily waived them; and 5) the factual basis for the guilty plea was adequate, and that Gray had indicated that it was in his best interest to enter a plea of guilty.

Thirty-six days later, on November 23, 1993, Gray moved to withdraw his plea, alleging that: 1) he did not understand the plea agreement which he signed; 2) he took no part in the sale of drugs as part of the alleged conspiracy; and 3) he did not understand that the consequences of his plea, specifically as to his sentence. On February 3, 1994, the district court held a hearing on Gray's motion. At the hearing, the arguments proffered by Gray's counsel focused almost exclusively on the second of these claims and Gray's assertions of innocence at his change of plea hearing. Essentially, Gray argued that he had only pled guilty because his co-defendants and defense counsel had suggested that it was the best course of action. The district court denied Gray's motion to withdraw his guilty plea. In so doing, the court pointed out that it had found that Gray had understood what he was doing and had pled guilty because he felt it to be in his best interests to do so. The district court explained to Gray that "there is no question in my mind that you were hesitant in pleading; but I have to conclude that your hesitation was brought about not so much from your protested innocence as much as it is from the penalty that you faced."[1]

### ANALYSIS

#### A. *Applicable Legal Principles*

█ While a defendant has no absolute right to withdraw a guilty plea, *United States v. Ribas–Dominicci,* 50 F.3d 76, 78 (1st Cir. 1995), a district court may allow such a request upon a showing of "a fair and just reason." Fed.R.Crim.P. 32(d); *see also Ribas–Dominicci,* 50 F.3d at 78; *United States v. Cotal–Crespo,* 47 F.3d 1, 3 (1st Cir.1995).

---

1. The Presentence Report for Gray had not yet been prepared by the date of the hearing on Gray's motion to withdraw his plea.

We have recently reiterated that the factors to be considered in determining whether there is such a reason are: 1) the force and plausibility of the proffered reason; 2) the timing of the request; 3) whether the defendant has asserted his legal innocence; and 4) whether the parties had reached a plea agreement. *Cotal–Crespo*, 47 F.3d at 3–4. These factors are relevant to the ultimate issue to be addressed, namely, whether the plea was "knowing, voluntary and intelligent within the meaning of [Fed.R.Crim.P.] 11." *Id.* at 3.

■ We have explained that by entering a guilty plea, a defendant effectively waives several constitutional rights. For that waiver to be valid, the plea must amount to a voluntary and intentional relinquishment or abandonment of a known right or privilege. *Id.* at 4 (citing *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969)). Rule 11 was intended to ensure that a defendant who pleads guilty does so with an understanding of the nature of the charge and the consequences of the plea. *Id.* at 4. We have identified the three "core concerns" of Rule 11: 1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea. *Id.* While technical violations of Rule 11 may often be deemed harmless, a total failure to address one of Rule 11's "core concerns" mandates that the guilty plea be set aside. *Id.* In the absence of such a "total failure," the question to be determined is whether deficiencies in the Rule 11 hearing affected the defendant's "substantial rights." Fed.R.Crim.P. 11(h); *see also Cotal–Crespo,* 47 F.3d at 5.

■ In determining whether there has been a violation of one of the core concerns of Rule 11, we review the totality of the circumstances surrounding the Rule 11 hearing at which the defendant pled guilty. *Cotal–Crespo,* 47 F.3d at 4. We have explained that "[w]hat is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant, rather than the form of the communication." *Id.* at 4–5.

■ We will reverse a district court's decision disallowing the withdrawal of a guilty plea only upon a showing of a "demonstrable abuse of discretion." *Id.* at 5. The district court's subsidiary findings of fact in connection with the plea-withdrawal motion are reviewed only for clear error. *Id.* With these principles in mind, we turn to Gray's claims.

### B. Was Gray's guilty plea "voluntary and intelligent"?

■ Gray claims that because of certain deficiencies in his Rule 11 hearing, his guilty plea was not given voluntarily and intelligently. Although Gray offers several grounds to support his claim, we find that only one of them merits discussion. In his motion to withdraw his plea, Gray stated essentially that he did not understand that he was pleading to a crime with a minimum ten-year sentence. He claims now that this misunderstanding of the consequences of his plea "tainted his decision to plead guilty," and constitutes a violation of one of Rule 11's core concerns. Although it is a close question, we agree.

When asked by the court at his Rule 11 hearing whether he understood "what the maximum punishment" could be, Gray responded, "Not exactly," thus alerting the court to his uncertainty about the consequences of his plea. In its attempt to explain these consequences, however, the court mistakenly stated, "The *maximum* punishment is ten years to life." (Emphasis added). This statement was incorrect; in fact, the *mandatory minimum* sentence for the crime to which Gray pled guilty was ten years, and the court had no discretion over this minimum sentence. Moreover, this incorrect explanation was exacerbated by the court's subsequent statement to Gray that "the matter of your sentence is up to me," implying that the length of the sentence was discretionary rather than mandatory. We think that based on these statements, a defendant could have reasonably concluded that ten years was the *maximum* sentence, at the discretion of the court, and that by pleading guilty it was possible that he could receive a sentence of less than ten years.

The government concedes that the district court's incorrect explanation of Gray's sen-

tence was "short of ideal." The government nevertheless argues that, when considered in light of the fact that Gray had that morning signed the plea agreement, which specifically sets forth the applicable minimum mandatory sentence of ten years, the court's mistake should be deemed harmless. This argument ignores the plain language of Rule 11, stating that "the court must address the defendant personally in open court and inform the defendant of, *and determine that the defendant understands*," the matters enumerated in Rule 11. Fed.R.Crim.P. 11(c) (emphasis added). We have held that "reliance on a written document is not a sufficient substitute for personal examination by the court" in ascertaining that Rule 11's core concerns are addressed. *United States v. Medina–Silverio,* 30 F.3d 1, 3 (1st Cir.1994) (internal quotations omitted). When asked at the hearing, Gray clearly stated under oath that he did *not* fully understand his potential sentence, *despite* the fact that he had signed the plea agreement that morning. Gray's signature on the plea agreement is therefore insufficient indication of his actual understanding of the consequences of his plea, and thus cannot cure or obviate the court's mistaken explanation of the applicable sentence.

We think that the substance of what was communicated to Gray, specifically the district court's incorrect and misleading explanation of the mandatory minimum sentence, could have led a reasonable person to misunderstand the consequences of his guilty plea in this context, thus implicating one of Rule 11's core concerns.

Although the court's error is not a "total failure to address" one of Rule 11's core concerns, *see Cotal–Crespo,* 47 F.3d at 5, we cannot say with any certainty that Gray's reasonable misunderstanding of his sentence did not affect his substantial rights within the meaning of Rule 11. In fact, the record indicates, and the government even suggests, that Gray decided to withdraw his guilty plea only after learning the true consequences of his decision through discussions with his counsel. It seems likely, at the very least, that if Gray had clearly and accurately understood the consequences of a guilty plea, he would have decided differently. The court's error leading to Gray's misunderstanding therefore affected Gray's substantial rights, and Gray's guilty plea cannot be said to have been given voluntarily and intelligently.[2] Accordingly, we hold that the district court erred in denying Gray's motion to withdraw his guilty plea.[3]

*The judgment of conviction and sentence is vacated. The guilty plea is set aside and the case is remanded for further proceedings consistent with this opinion.*

---

2. We recently rejected a somewhat similar challenge as harmless error. In *United States v. López–Pineda,* 55 F.3d 693 (1st Cir.1995), the appellant contended that the Rule 11 plea colloquy had been deficient due to the failure of the district court to identify the applicable minimum mandatory sentence. *Id.* at 696. The four-part test for assessing such Rule 11 claims (plausibility of grounds for requesting plea change, timing of request, assertion of innocence, and legal sufficiency of original Rule 11 hearing), requires a different result in this case. First, Gray advances a plausible basis for requesting vacation of his guilty plea and for failing to understand the sentencing consequences of his guilty plea, *see supra* at 60–61, whereas López–Pineda tendered a highly implausible explanation. Second, López–Pineda complained only after his sentence had been imposed. *Id.* at 697. Third, unlike Gray, López–Pineda asserted no claim of innocence. *Id.*

3. Because we find that Gray misunderstood the consequences of his guilty plea and reverse on this basis, we do not address his other arguments on appeal.