UNITED STATES of America,
Appellee,

v.

Robert Ali HERNANDEZ–WILSON,
Defendant–Appellant.

No. 98–1212.

United States Court of Appeals,
First Circuit.

Heard June 8, 1999.

Decided July 23, 1999.

Alexander Zeno for appellant.

Timothy Faerber, with whom Guillermo Gil, United States Attorney, José A. Quiles–Espinosa, Senior Litigation Counsel, and Nelson Pérez–Sosa, Assistant United States Attorney, were on brief for appellee.

Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LIPEZ, Circuit Judge.

LIPEZ, Circuit Judge.

Robert Ali Hernandez–Wilson challenges the validity of his guilty plea to a charge of conspiracy to distribute heroin in

**2**

violation of 21 U.S.C. § 846. The record reveals that the guilty plea accepted by the district court was the product of confusion on the part of defense counsel, the prosecutor, and the court. Under these circumstances, we conclude that Hernandez reasonably misunderstood the consequences of his guilty plea. Therefore, we must vacate the conviction and sentence, set aside the guilty plea, and remand to the district court for further proceedings. *See United States v. Gray,* 63 F.3d 57, 58 (1st Cir.1995).

## I.

In April 1997, Hernandez was indicted on four counts related to his participation in a conspiracy to distribute heroin. Hernandez originally entered a plea of not guilty, but on July 18, 1997 a change-of-plea hearing (Rule 11 hearing) was held before the district court. *See* Fed. R.Crim.P. 11(c) (requiring that before a guilty plea can be accepted the district court must "address the defendant personally in open court" to ensure that the plea is a knowing and voluntary waiver of the defendant's constitutional rights). In part based on the government's promise to recommend that he be sentenced under 18 U.S.C. § 3553(f), Hernandez changed his plea to guilty on Count One of the indictment, admitting to a violation of 21 U.S.C. § 846 (conspiracy to distribute heroin).[1]

The sentencing provision that was central to the plea agreement, 18 U.S.C. § 3553(f), commonly referred to in sentencing parlance as the "safety valve," allows courts to sentence defendants who have little or no prior criminal history "without regard to any statutory minimum sentence" under certain circumstances. At the time of the July 18, 1997 Rule 11 hearing, Hernandez's defense counsel, the Assistant United States Attorney prosecuting the case, and the district court were all under the impression that Hernandez was preliminarily eligible for sentencing

under the safety valve, meaning that his prison sentence could have been as low as 30 months. On the other hand, if Hernandez did not receive the benefit of the safety valve provision, the crime to which he was pleading guilty carried a mandatory minimum sentence of 60 months.

We can best explain the handling of the "safety valve" provision at Hernandez's Rule 11 hearing on July 18, 1997 by quoting extensively from the hearing:

> The Court: You have a plea agreement which I have examined. The plea agreement says that you are pleading guilty to this drug conspiracy count. It also spells out the penalties that we discussed earlier on in this colloquy. It also says here that you're going to try to comply with the safety valve provisions of Guideline section 5(c)(1).2. And if you do so then I will be able to sentence you without making reference to the statutory mandatory minimum term of imprisonment. Do you understand that?
>
> The Defendant: I don't understand. I don't understand. I didn't understand that part.
>
> The Court: Have you heard about the safety valve provisions?
>
> Defense Counsel: You Honor, if I may? His big concern is that you stated that there is a statutory minimum of five years. And all the time he has been considering level nineteen which is thirty [months].
>
> The Court: Let me clarify that confusion that you have. When I mentioned the five years statutory minimum term of imprisonment I mentioned it because I have an obligation to tell you about that. Do you understand that?
>
> The Defendant: I understand.
>
> The Court: Also, I have an obligation [to tell you] about the forty years which is the maximum. Do you understand that?
>
> The Defendant: I do.

1. According to the terms of the plea agreement, the other three charges were to be dismissed after Hernandez was sentenced by the district court.

The Court: But I also have an obligation to tell you that you can escape that and be sentenced without reference to that mandatory minimum if you comply with the safety valve provision of section 5(c)(1).2. Do you understand that?

The Defendant: I do.

The Court: That requires that you sit down with an agent, tell them everything you know about this case. And if you have no criminal record, if you have no criminal record and you were not involved with firearms and things of that sort, then I can give you the benefit of sentencing you without reference to the statutory minimum. For example, to a level nineteen. Do you understand that?

The Defendant: I understand.

\*  \*  \*  \*  \*  \*

The Court: And if you have no criminal history your Guideline imprisonment range with a level nineteen will be thirty to thirty-seven months. However, if you do not comply with the safety valve obligations that you have, that becomes a sixty month sentence. Do you understand that? So it is in your best interest to comply.

The Defendant: Well, okay. What I don't understand is I just signed for thirty months. And what I don't understand is if after that they can give me sixty months. I don't understand that.

The Court: Let me explain to you. [Y]ou're not signing for thirty months. You are expecting to be sentenced to thirty months. And I hope that that will be the case. Do you understand? But you still have to meet with an agent, and you have to comply with the safety valve

provision. You will have to sit down with this agent and you will have to tell him this is what happened. . . . *The government will check that you have no criminal record. Which you don't.* And then I will give you [the] benefits of the safety valve. Do you understand that?

The Defendant: I understand.

\*  \*  \*  \*  \*  \*

The Court: Okay. The government is going to recommend a thirty month sentence. You understand that?

The Defendant: Ah-ha.

The Court: And the government expects that you will comply with the safety valve provision. You understand?

The Defendant: Right now they will offer the same thing to my codefendants, right?

The Court: Let me say this. Let me see if I can—let me open the book here. For you to qualify for the safety valve you have to comply with five things. *Number one: No criminal record. Do you have a criminal record?*

Defense Counsel: *No, your Honor.* There is a Law fifty-four charges, but that's not—

The Court: *Let me change that. You cannot have more than one point of criminal record. It seems to me that you're okay in that sense.*

(emphasis added).

In fact, as discussed more fully below, at the time of the Rule 11 hearing Hernandez was ineligible for the safety valve. In order to qualify for sentencing under the safety valve, a defendant may "not have more than 1 criminal history point." *See* 18 U.S.C. § 3553(f)(1).[2] All the partici-

---

**2.** While we are chiefly concerned with the first requirement, 18 U.S.C. § 3553(f) actually has five requirements. In order to give the defendant the benefit of the safety valve, the court must find, inter alia, that:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines . . . ;

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. . . .

pants (i.e., the prosecutor, the court, defense counsel and Hernandez) were aware that Hernandez had one prior criminal conviction at the time of the plea hearing. In November of 1995, Hernandez pled guilty to one count of simple assault in violation of Law 54 (Puerto Rico's domestic violence statute). On January 9, 1996, Hernandez was sentenced to eighteen (18) months probation pursuant to his conviction under Law 54. All of the participants correctly understood that this conviction gave Hernandez only one criminal history point. However, either they did not know or they did not appreciate the significance of the fact that Hernandez had committed the offense for which .he was pleading guilty while on probation for the Puerto Rico Law 54 conviction. Under the sentencing guidelines, this fact added two more points to Hernandez's criminal history score, thereby disqualifying him from the benefits of the safety valve. *See* U.S.S.G. § 4A1.1(d) ("Add 2 points [to the defendant's criminal history score] if the defendant committed the instant offense while under any criminal justice sentence, including probation ...."); *see also* 18 U.S.C. § 3553(f) (restricting sentencing under the safety valve to defendants that "do[ ] not have more than 1 criminal history point"). Therefore, at the time Hernandez negotiated his plea bargain with the government and at the time he entered his plea of guilty, there was no possibility that Hernandez could be sentenced to anything less than 60 months, the statutory mandatory minimum sentence for the crime to which Hernandez was pleading guilty.[3]

On October 17, 1997, Hernandez's former defense counsel moved for leave to withdraw as counsel for the defendant citing irreconcilable differences. On October 19, 1997, Hernandez moved *pro se* for dismissal of his counsel. In addition, Hernandez requested (1) a continuance of the sentencing hearing; (2) appointment of new counsel; and (3) a hearing concerning whether Hernandez had been adequately counseled as to the terms and conditions of the plea agreement. By margin order, the district court appointed new counsel to represent Hernandez and continued the sentencing hearing until January 1998. By the time of sentencing in January 1998, Hernandez was represented by different counsel. Hernandez's new counsel did not renew or otherwise pursue Hernandez's motion for a hearing on the validity of the guilty plea.

The district court held a sentencing hearing on January 22, 1998. Pursuant to the pre-sentence report, Hernandez was assigned a criminal history score of three. At sentencing, Hernandez exhibited a lack of understanding about the reasons for the unavailability of a thirty month sentence. The court responded that "we have already discussed this; that you were—that when I took your plea, I do think that it was very carefully explained to you, all the consequences of your plea. You agree to that, that in that sense that I did not misrepresent anything to you, correct?" Hernandez responded that he was "not very good at English," that the interpreter was speaking very fast and that he "had already signed [the plea agreement] when you talked to me about the safety valve." Later in the sentencing hearing, Hernandez's counsel indicated Hernandez's belief that he had not been adequately counseled "about the impact of [the Law 54] charge in the State courts." Despite this indication of a problem with Hernandez's plea, and Hernandez's earlier *pro se* request for a hearing on whether he had been adequately counseled about the terms and

18 U.S.C. §§ 3553(f)(1),(5). The other eligibility requirements are not implicated in this appeal.

**3.** Hernandez pled guilty to a violation of 21 U.S.C. § 846 which makes members of drug distribution conspiracies "subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The underlying drug distribution scheme which was the object of the conspiracy carried a minimum five year (60 month) sentence. *See* 21 U.S.C. § 841(b)(1)(B).

conditions of his plea agreement, the district court made no further inquiry into whether Hernandez had understood the consequences of his guilty plea at the time that it was entered, and proceeded to sentence Hernandez to the statutory minimum sentence of 60 months incarceration. Hernandez now appeals from his conviction and sentence.

## II.

Rule 11 of the Federal Rules of Criminal Procedure governs the acceptance of guilty pleas to federal criminal violations. Pursuant to Rule 11, in order for a plea of guilty to constitute a valid waiver of the defendant's right to trial, guilty pleas must be knowing and voluntary: "Rule 11 was intended to ensure that a defendant who pleads guilty does so with an 'understanding of the nature of the charge and the consequences of his plea.'" *United States v. Cotal–Crespo*, 47 F.3d 1, 4 (1st Cir.1995) (quoting *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). A breach of Rule 11 that "implicates one of the rule's 'core concerns' mandates that the plea be set aside." *United States v. Medina–Silverio*, 30 F.3d 1, 3 (1st Cir.1994) (internal quotations omitted). In previous cases we have identified three core concerns: "1) absence of coercion; 2) understanding of the charges; and 3) knowledge of the consequences of the guilty plea." *Cotal–Crespo*, 47 F.3d at 4 (citing *United States v. Allard*, 926 F.2d 1237, 1244–45 (1st Cir. 1991)). Rule 11 by its terms excuses harmless errors, *see* Fed.R.Crim.P. 11(h), and focuses the court's attention instead on "whether any particular defect in the Rule 11 hearing affected the defendant's 'substantial rights.'" *United States v. Marrero–Rivera*, 124 F.3d 342, 348 (1st Cir.1997). In determining whether defendant's substantial rights were abridged, we consider the totality of the circumstances

to determine "what was communicated by the trial court, and what should reasonably have been understood by the defendant." *Cotal–Crespo*, 47 F.3d at 4.

Despite the failure of Hernandez's new attorney to renew explicitly at the sentencing hearing his client's request that the district court examine Hernandez's understanding of the consequences of his plea at the time of the Rule 11 hearing, Hernandez has not waived this issue on appeal. Contrary to most allegations of error, "a Rule 11 challenge will not be deemed waived upon a party's failure to raise it in the district court." *United States v. Parra–Ibanez*, 936 F.2d 588, 593 (1st Cir.1991). Because of the important concerns protected by Rule 11,[4] we "must determine compliance with Rule 11, even if a claim of noncompliance was never presented to the trial court." *Id.* (citation omitted). However, in recognition of the limits of appellate review, we are constrained to consider only the record that was created in the district court in considering a Rule 11 challenge on direct appeal. *See id.* Because Hernandez's appeal "can be decided wholly on the basis of the formal record accumulated thus far ... [Hernandez's] Rule 11 challenge is properly before us," *id.* at 594, and we consider it on the merits.

## III.

Hernandez alleges that he was misled by the prosecutor, the court, and his own counsel at his Rule 11 hearing and thus his guilty plea was not "given voluntarily and intelligently." *See United States v. Gray*, 63 F.3d 57, 60 (1st Cir. 1995). On the basis of our review of the Rule 11 hearing transcript, we agree.

The prosecutor, the court and defense counsel believed that Hernandez would be eligible for sentencing under the safety valve, 18 U.S.C. § 3553(f). Indeed, in ex-

---

**4.** The requirements that Rule 11 imposes on the plea bargaining process "protect[s] not only the parties, but also the fairness, integri-

ty [and] public reputation of judicial proceedings." *Parra–Ibanez*, 936 F.2d at 593 (internal citations and quotation marks omitted).

plaining the terms of the plea to Hernandez, the court at two points affirmatively represented to Hernandez that his criminal history made him eligible for sentencing under the safety valve. Although the court's representations about the availability of the safety valve were phrased conditionally several times, the court assumed that Hernandez's criminal history was not a problem. Instead, the court used conditional language to caution Hernandez that in order to get the benefit of the safety valve, he needed to truthfully and completely describe his involvement in the conspiracy to government agents. The court was thus referring to a condition within Hernandez's control when he told Hernandez that "it is in your best interest to comply [with the conditions of 18 U.S.C. § 3553(f)]." The court specifically pointed out to Hernandez more than once that he would be obligated to de-brief government agents about his involvement in the conspiracy in order to comply with the safety valve. If he did so, the court indicated, he would be eligible for sentencing under the safety valve.[5]

In *United States v. Gray*, 63 F.3d 57 (1st Cir.1995), we faced an analogous situation. When the district court, pursuant to Rule 11, asked Gray whether he understood the consequences of his proffered guilty plea, Gray responded, "Not exactly." *Id.* at 60. In subsequently explaining Gray's potential sentence, "the court mistakenly stated, 'The maximum punishment is ten years to life.'" *Id.* In fact, the mandatory *minimum* for the crime to which Gray was pleading guilty was ten years; the court had no discretion to impose a lower sentence. *Id.* We vacated Gray's conviction:

We think that the substance of what was communicated to Gray, specifically the district court's incorrect and misleading explanation of the mandatory minimum sentence, could have led a reasonable person to misunderstand the consequences of his guilty plea in this context, thus implicating one of Rule 11's core concerns.

Although the court's error is not a "total failure to address" one of Rule 11's core concerns, *see Cotal–Crespo*, 47 F.3d at 5, we cannot say with any certainty that Gray's reasonable misunderstanding of his sentence did not affect his substantial rights within the meaning of Rule 11 . . . . It seems likely, at the very least, that if Gray had clearly and accurately understood the consequences of a guilty plea, he would have decided differently. The court's error leading to Gray's misunderstanding therefore affected Gray's substantial rights, and Gray's guilty plea cannot be said to have been given voluntarily and intelligently.

*Gray*, 63 F.3d at 61.

A similar result obtains in this case. Hernandez was clearly concerned with the length of his sentence before he pled guilty. He was told that he would be eligible for a lighter sentence for which he was not eligible. This misunderstanding implicates one of Rule 11's core concerns (i.e., the defendant's knowledge of the consequences of his plea). *See Cotal–Crespo*, 47 F.3d at 4. Hernandez's plea was unmistakably induced at least in part by an inaccurate representation by the court about the consequences of his plea, thereby affecting his substantial rights. His guilty plea must therefore be set aside. *See McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void."); *see also United States v. Gray*, 63 F.3d 57 (1st Cir.1995); *Correale v. United States*, 479 F.2d 944 (1st Cir. 1973).

---

**5.** We focus on the role of the court in conveying inaccurate information to Hernandez about the consequences of his plea because of the court's responsibility pursuant to Rule 11 to convey accurate information to the defendant. Nevertheless, in fairness to the court, we must note that it was served poorly by the prosecutor and defense counsel because of their failure to appreciate the significance of Hernandez's criminal history.

Accordingly, we **vacate** the judgment of conviction and the sentence, **set aside** the guilty plea, and **remand** the case for further proceedings consistent with this opinion.