[NOT FOR PUBLICATION -- NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

No. 98-1919

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

MARK DANIEL MARIN-CANALES,

Defendant, Appellant.

No. 98-1920

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

ALEXANDER RODRIGUEZ-MIRANDA,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,

and Lipez, Circuit Judge.

_____

Zygmunt G. Sominski on brief for appellant Mark Daniel Marin-Canales.

Carmen R. De Jesus on brief for appellant Alexander Rodriguez-Miranda.

Camille Velez-Rive, Assistant United States Attorney, Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney, on brief for appellee.

———————

April 24, 2000

———————

**COFFIN, Senior Circuit Judge.** Defendants-appellants Mark Daniel Marin-Canales and Alexander Rodriguez-Miranda request that this court vacate their pleas of guilty to cocaine possession charges and challenge various aspects of their sentences. Finding no errors in the trial court's acceptance of defendants' guilty pleas or imposition of their sentences, we affirm.

## I.  Factual Background

On May 9, 1997, a United States Customs Service airplane observed a low-flying Cessna 210 aircraft proceeding from South America into the United States. The aircraft entered the United States over Ponce, Puerto Rico, and it was pursued to the vicinity of Cidra, Puerto Rico, although it evaded pursuers by flying under electrical wires. The Puerto Rico Police Department received three anonymous calls collectively stating that a low-flying plane was throwing out bales to a farm in Cidra where a Mitsubishi Expo van and a BMW waited and that some of the bales had been placed in the trunk of the BMW. At least one caller provided the license plate numbers of the vehicles.

The Puerto Rico police first located the BMW, occupied by Marin and another participant, and upon stopping and searching it, discovered 28 kilograms of cocaine in the trunk wrapped identically to the 150 kilograms of cocaine found on the farm.

-4-

The van, occupied by Rodriguez and another participant, was subsequently stopped and two nine-millimeter semi-automatic pistols were later found by a subcontractor maintaining the impounded vehicle for the United States Customs Service.

Both defendants entered into plea agreements with the United States under which they pled guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), in exchange for the dismissal of other counts.[1]  In each, there was no agreement as to the defendant's criminal history category (CHC).  Marin's plea agreement stated that _if_ his CHC were I and _if_ he qualified for the "safety valve" provision of U.S.S.G. § 5C1.2,[2] the pertinent sentencing range would be 87 to 108 months and the government would recommend 87 months.  Rodriguez's plea agreement stated that _if_ his CHC were I, the applicable sentencing range would be 168 to 210 months and the government would recommend 168.  Both agreements spoke in terms of contingencies – in both, the defendant was promised only that the government would recommend a sentence at the lower end of

---

[1]Marin pled guilty to count IV of the five-count indictment, which charged possession of 28 kilograms of cocaine, and Rodriguez pled guilty to count V, which charged possession of 150 kilograms.

[2]The "safety valve" provision releases the minimum mandatory sentence when a defendant meets certain criteria, including having a CHC of I.  See U.S.S.G. § 5C1.2(1).

the applicable range, whatever that might be.  Both defendants agreed that their sentences would be within the sound discretion of the sentencing judge and would be imposed in accordance with the Sentencing Guidelines.[3]

The court accepted defendants' guilty pleas and sentenced them pursuant to the United States Sentencing Guidelines. Because Marin's CHC was II, he was not eligible for the safety valve and the applicable sentencing range was 121 to 151 months. The court accepted the government's recommendation of a sentence at the lower end, 121 months.  Because Rodriguez's CHC was II, the applicable sentencing range was 188 to 235 months.  The court accepted the government's recommendation of 188 months.

## II.  Denial of Rodriguez's Motion to Suppress

Prior to pleading guilty, Rodriguez moved for the suppression of his warrantless arrest and all evidence flowing from the arrest, arguing that the arrest was effected without probable cause in  violation of his Fourth Amendment rights. See Beck v. Ohio, 379 U.S. 89, 91 (1964).  The court denied

---

[3]Both agreements explained that "defendant . . . is aware that his sentence is within the sound discretion of the sentencing judge and will be imposed in accordance with the United States Sentencing Guidelines."  Marin's plea agreement also declared: "Defendant . . . is fully aware . . . that if his criminal history is greater than I, his sentence will be increased accordingly, and that the Court is not bound by this plea agreement."

Rodriguez's motion and he subsequently entered into the plea agreement. It is well established that by entering an unconditional guilty plea, a defendant waives all non-jurisdictional defects. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) (explaining that after a defendant has pled guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"); Acevedo-Ramos v. United States, 961 F.2d 305, 307 (1st Cir. 1992) ("It is clear that a plea of guilty to an indictment is an admission of guilt and a waiver of all non-jurisdictional defects."). Because the issues raised by Rodriguez are non-jurisdictional, he has waived the opportunity for appellate review by entering an unconditional guilty plea.[4]

### III.  Voluntariness of Defendants' Guilty Pleas

Both defendants seek to have their guilty pleas vacated due to what they define as defects in the plea hearing proceedings, allegedly in violation of Fed. R. Crim. P. 11. The advisory committee's note to Fed. R. Crim. P. 32, which authorizes plea

---

[4]After filing his brief, Marin requested that he be allowed to adopt the arguments made by Rodriguez with regard to the motion to suppress. Because Marin was not a party to the motion to suppress, he cannot appeal its denial or raise the issues it presented. See Playboy Enters., Inc. v. Public Serv. Comm'n of Puerto Rico, 906 F.2d 25, 40 (1st Cir. 1990) (arguments not made before district court or raised too late on appeal are waived). Even if he had been a party to the motion, his arguments were waived when he pled guilty, as we have explained.

withdrawal motions, explains that when a defendant moves for the first time on direct appeal to set aside his guilty plea, "the applicable standard is that stated in Hill v. United States, 368 U.S. 424 (1962): 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Fed. R. Crim. P. 32 advisory committee's note; see also Fed. R. Crim. P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."). We acknowledge, as we did in United States v. Carrington, 96 F.3d 1 (1st Cir. 1996), that the standard upon which we base our review of the defendant's request to vacate his guilty plea is "'somewhat cloudy.'" See id. at 5 n.2 (quoting United States v. Martinez-Martinez, 69 F.3d 1215, 1219 (1st Cir. 1995)). In other cases, we have applied the harmless error standard. See, e.g., United States v. Parra-Ibanez, 936 F.2d 588, 598 & n.24 (1st Cir. 1991). Because we find no error at all in the Rule 11 proceedings, we need not decide this issue.

We consider primarily four factors when reviewing a request to withdraw a guilty plea:

> (1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether, when

-8-

viewed in light of the emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the requirements imposed by Fed. R. Crim. P. 11, or otherwise legally suspect.

United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994) (footnote omitted).

Regarding the first factor, defendants proffer no particular reason for requesting changes of plea, other than alleged involuntariness.  Second, their requests were made thirteen months after their change of plea hearings and nine months after sentencing without explanation for the delay.[5]  We have explained that "the more a request is delayed – even if made before sentence is imposed – the more we will regard it with disfavor." United States v. Isom, 85 F.3d 831, 838 (1st Cir. 1996).  Third, defendants do not assert their innocence, which weights the balance against allowing them to withdraw their pleas.  See id. at 839.

Mindful of the fact that defendants start from this disadvantaged point, we consider the final factor.  Our main concern here is whether defendants' guilty pleas were "knowing,

---

[5]Although both defendants filed notices of appeal in June 1998, they did not allege error in the Rule 11 proceedings until filing their March 1999 statement of issues.  We recognize that the delay in receiving transcripts hindered some aspects of defendants' arguments with regard to the Rule 11 proceedings, but other aspects – for example, that the plea agreements were misleading – could easily have been identified prior to the receipt of transcripts.

voluntary and intelligent within the meaning of [Federal Rule of Criminal Procedure] 11." United States v. Cotal-Crespo, 47 F.3d 1, 3 (lst Cir. 1995).  Fed. R. Crim. Pro. 11(d) states:

> The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.  The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

The rule encompasses three "core concerns": "1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea."
United States v. Gray, 63 F.3d 57, 60 (lst Cir. 1995). Furthermore, we review the "totality of the circumstances surrounding the Rule 11 hearing, rather than apply a 'talismanic test.'" Cotal-Crespo, 47 F.3d at 4-5 (citation omitted).

   A.  Rodriguez

Defendant Rodriguez makes only general allegations that the court erred in accepting his guilty plea and points us to no specific error.  Assuming that he has preserved this argument, we peruse the Rule 11 proceedings for general error and we find none.  Instead, we discover that the court conducted a

"comprehensive inquiry," akin to that upheld in Isom, 85 F.3d at 835-37.

The court ascertained that Rodriguez had signed the petition to change his plea to guilty, had fully answered a plea questionnaire, and had signed the plea agreement. Rodriguez responded affirmatively to the court's questions about whether he had discussed the indictment against him with his counsel, whether he understood the nature of the charge to which he was pleading guilty, and whether he understood that he waived certain fundamental rights by pleading guilty (such as the rights to remain silent, be assisted by counsel, confront and cross-examine witnesses against him, present witnesses on his own behalf, and hold the prosecution to its burden of proving him guilty beyond a reasonable doubt). After this, Rodriguez confirmed that he had no doubts about pleading guilty. Rodriguez affirmatively answered the court's particular questions about his understanding of the way in which his sentence would be determined and that a 168 month sentence was contingent upon a CHC of I. Further, Rodriguez indicated that he understood that the only agreement was that which was in writing, that the plea agreement had been translated to him, that he had not been intimidated, threatened, or coerced in

regard to his guilty plea, and that he pled guilty freely, willingly, knowingly, and voluntarily.

Thus, the court addressed the three core concerns that must be considered when a defendant wishes to enter a guilty plea; the court's questions confirmed that Rodriguez had not been coerced, that he understood the charges, and that he understood the consequences of his guilty plea, including sentencing procedures and possibilities.

B. <u>Marin</u>

Defendant Marin makes more particularized contentions regarding the Rule 11 proceeding. He asserts that the court erred by setting deadlines for the filing of a change of plea petition that created undue pressure on him, making improper comments during the hearing, failing to correctly apprise him of the sentence he faced, neglecting to inquire about his failure to answer three questions on the plea questionnaire, and failing to order a presentence investigation prior to the acceptance of his plea.

First, Marin complains about the plea filing deadlines set by the court pursuant to Fed. R. Crim. P. 11(e)(5). Defendants were indicted on May 14, 1997, and pled not guilty on that date. The docket reflects that on January 27, 1998, the court set a deadline for change of plea petitions of February 4, due to an

impending trial date of February 9. On February 6, Marin filed his request. In short, Marin had nearly nine months from his indictment and entry of a not guilty plea until the deadline to change his plea, the court set a necessary deadline just prior to trial, and Marin apparently made no effort to seek additional time.

Second, the specific comments of the court that Marin complains of, to the effect that he had a good attorney, could not have indicated to Marin that he would receive a particular sentence nor could it have coerced Marin's plea in any way. The court very clearly explained to Marin, and Marin acknowledged that he understood, that the 87 month sentence would be applicable only if he had a CHC of I and qualified for the safety valve. Further, the court asked Marin three times if he understood that if he failed to comply with the safety valve, his minimum term of imprisonment would be 120 months, to which Marin responded affirmatively. Marin relies on United States v. Padilla, 23 F.3d 1220 (7th Cir. 1994), in which we suggested that the appropriate remedy when a defendant was never informed on a mandatory minimum was to allow the defendant to withdraw his guilty plea. See id. at 1224. In the instant case,

however, the court did apprise defendant of a 120 month minimum, only one month less than defendant's actual sentence.[6]

Third, the three questions of the forty-four question plea questionnaire which Marin failed to answer pertained to whether he had been coerced, or induced by promises, to enter a plea of guilty. Nevertheless, at Marin's change of plea hearing, the court questioned him as to whether he had been intimidated, coerced, or forced into pleading guilty by anyone, and he responded negatively.

Fourth, Marin alleges that the court erroneously failed to order a presentence investigation prior to accepting his plea, relying on U.S.S.G. § 6B1.1(c), which states that the court "shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(e)(1)(B), and the court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report." The commentary

---

[6]Marin's argument suggests that of the defendant in United States v. Hernandez-Wilson, 186 F.3d 1 (1st Cir. 1999), in which we agreed with the defendant that the court had misled him to believe that he was eligible for the safety valve provision. See id. at 6. In that case, however, the prosecutor, defense counsel, and the court believed the defendant was eligible for the safety valve and the court indicated that if defendant complied with certain conditions he would be eligible for the safety valve, although ultimately his criminal history category prevented him from qualifying. See id. at 5-6.

to the Guideline states that it is intended to parallel Rule 11(e), outlining plea agreement procedure. As the Fourth Circuit has explained, the Guidelines take this stance in order to "carry out the Congressional intent that prosecutors do not undermine the workings of the Sentencing Guidelines." United States v. Ewing, 957 F.2d 115, 117 (4th Cir. 1992).

In United States v. Sanchez-Barreto, 93 F.3d 17 (lst Cir. 1996), responding to the same argument, we explained that the flaw in the defendant's argument was that "he offers no reason for equating acceptance of his guilty plea with the acceptance of a plea agreement under § 6B1.1(c)." Id. at 24; see also Ewing, 957 F.2d at 118 (same). Here, when accepting Marin's guilty plea at the change of plea hearing, the court repeatedly emphasized that his sentence was not definite and would be determined at his sentencing hearing. By sentencing Marin in accord with the Sentencing Guidelines, after reviewing his presence report, the court fully accepted the plea agreement at the sentencing hearing. In addition, Marin has not explained how his interpretation of U.S.S.G. § 6B1.1(c) can be aligned with Fed. R. Crim. P. 32(b)(3), which prohibits disclosure of a presentence report unless the defendant has consented, pled guilty or nolo contendere, or been found guilty, other than to suggest that requiring the presentence

-15-

investigation at the change of plea hearing would benefit the defendant. See Sanchez-Barreto, 93 F.3d at 25 ("The overarching purpose served by the PSR is to assist the district court at sentencing.").[7] The district court's procedure was entirely in accord with the Sentencing Guidelines as well as the Federal Rules of Criminal Procedure.

Finally, Marin alleges that his plea was involuntary. Again, a review of the transcript of the proceedings establishes that the court engaged in a comprehensive inquiry. Marin stated, in response to the court's questioning, that he had completed one year of college, that he had not consumed any medication or alcohol in the prior twenty-four hours, and that he understood the proceedings. He acknowledged having an understanding of the indictment, satisfaction with his counsel's performance, and awareness of the fundamental rights he was waiving by pleading guilty. In addition, the court took pains to explain the sentencing possibilities to Marin, which were laid out in the plea agreement, and which Marin affirmed that he understood. Further, the court complied with Fed. R. Crim. P.

_____

[7]Marin makes the related argument that the court erred because it accepted the plea agreement before his CHC was determined. As just explained, the court did not accept the plea agreement until sentencing when Marin's CHC was determined. Further, the plea agreement explicitly stated that the parties did not agree on Marin's CHC and based all subsequent sentencing provisions on the contingency that his CHC would be I.

11(f), contrary to Marin's claims, by determining that there was a factual basis for his plea.  See, e.g., United States v. Martinez-Martinez, 69 F.3d 1215, 1220 (1st Cir. 1995) ("If, during the plea colloquy, the government's statement or the defendant's own version of the facts sets forth all elements and conduct of the offense, admission to that conduct sufficiently establishes the defendant's understanding of the charge."). Again, the court addressed the three core concerns – that Rodriguez had not been coerced, that he understood the charges, and that he comprehended the consequences of his guilty plea.

In conclusion, we hold that both defendants entered their guilty pleas knowingly, intelligently, and voluntarily.  They have failed to establish any reason why their guilty pleas should be withdrawn.

## IV.   Sentencing

Both defendants assert that the court made various errors at sentencing.  "We have repeatedly stated in the sentencing context, as well as in other areas, that issues not presented to the district court will not be addressed for the first time on appeal."  United States v. Haggert, 980 F.2d 8, 10 (1st Cir. 1992).  By not raising their arguments before the district

court, defendants have waived many of their arguments.[8] The one exception regards their requests for downward departures in their criminal history categories. Only when a sentencing court's decision not to depart is based upon a mistaken view that it lacks authority do we have jurisdiction to review it. See United States v. Leblanc, 24 F.3d 340, 348 (lst Cir. 1994).

Both defendants argued to the district court that their CHCs be reduced to I pursuant to U.S.S.G. § 4A1.3 because their criminal history categories overrepresented the seriousness of their criminal pasts and the likelihood of future crimes. Rodriguez suggested that his CHC of IV was excessive because several of the convictions were for juvenile offenses or misdemeanors. The district court agreed with Rodriguez to an extent, reducing his CHC to II rather than I. In Marin's case, the court refused to make the departure, stating that the Guidelines dictated the sentence "unless there is reason to depart or I find some reason to [grant] a downward departure in

_____

[8]Marin complains that the court in effect vacated a binding plea agreement between himself and the prosecutor. This argument is baseless because the plea agreement itself stated that its sentencing recommendations were not binding on the court. Further, the plea agreement did not purport to set a definite sentence in the event that his CHC was not I. Moreover, in the plea agreement, Marin admitted to understanding that if his CHC was not I and he did not qualify for the safety value provision, he would face a minimum mandatory sentence of 120 months.

this case." By making the departure in Rodriguez's case, the same day that he sentenced Marin, the court revealed its understanding of its authority. <u>See</u>, <u>e.g.</u>, <u>id</u>. (concluding that sentencing court understood that it had authority to depart because it entertained the defendant's argument before denying departure).

## V.  Ineffective Assistance of Counsel

Lastly, Marin claims that he was denied the effective assistance of counsel in violation of his Sixth Amendment right. "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (lst Cir. 1993) (citing cases).  We have allowed exceptions only when the facts are not in dispute and the record is sufficiently developed for us to make a reasoned evaluation of the defendant's claims.  See id.

In the instant case, the record is not sufficiently developed to permit reasoned consideration of Marin's claims. His allegations, consisting mainly of counsel's failure to secure a CHC in the plea agreement, to bring attention to Marin's failure to respond to three questions in the plea questionnaire, and to seek to set aside Marin's guilty plea after it became evident that his CHC would be II not I, are neither based on undisputed facts nor sufficiently developed for this court to pass judgment on counsel's performance.  This claim must be brought first before the district court via a request for post-conviction relief.

## VI. Conclusion

We hold that the issues raised in Rodriguez's appeal of the denial of his motion to suppress have been waived.  Further, we deny defendants' requests to withdraw their guilty pleas because we conclude that they were entered into knowingly, intelligently, and voluntarily.  We also find no errors in the court's sentencing of defendants.  Finally, we dismiss Marin's ineffective assistance of counsel claim without prejudice.