<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1212

                   UNITED STATES OF AMERICA,

                           Appellee,

                               v.

                  ROBERT ALI HERNANDEZ-WILSON,

                      Defendant-Appellant.

        ON APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Jos Antonio Fust, U.S. District Judge]

                             Before

                    Boudin, Circuit Judge,
               Campbell, Senior Circuit Judge,
                  and Lipez, Circuit Judge.
                                
                                
                                
                                
         Alexander Zeno for appellant.
         Timothy Faerber, with whom Guillermo Gil, United States
Attorney, Jos A. Quiles-Espinosa, Senior Litigation Counsel, and
Nelson Prez-Sosa, Assistant United States Attorney, were on brief
for appellee.

July 23, 1999

                                
                                

 LIPEZ, Circuit Judge.  Robert Ali Hernandez-Wilson
challenges the validity of his guilty plea to a charge of
conspiracy to distribute heroin in violation of 21 U.S.C.  846.  
The record reveals that the guilty plea accepted by the district
court was the product of confusion on the part of defense counsel,
the prosecutor, and the court.  Under these circumstances, we
conclude that Hernandez reasonably misunderstood the consequences
of his guilty plea.  Therefore, we must vacate the conviction and
sentence, set aside the guilty plea, and remand to the district
court for further proceedings.  See United States v. Gray, 63 F.3d
57, 58 (1st Cir. 1995).
                              I.
 In April 1997, Hernandez was indicted on four counts
related to his participation in a conspiracy to distribute heroin.  
Hernandez originally entered a plea of not guilty, but on July 18,
1997 a change-of-plea hearing (Rule 11 hearing) was held before the
district court.  See Fed. R. Crim. P. 11(c) (requiring that before
a guilty plea can be accepted the district court must "address the
defendant personally in open court" to ensure that the plea is a
knowing and voluntary waiver of the defendant's constitutional
rights).  In part based on the government's promise to recommend
that he be sentenced under 18 U.S.C.  3553(f), Hernandez changed
his plea to guilty on Count One of the indictment, admitting to a
violation of 18 U.S.C.  846 (conspiracy to distribute heroin).  
 The sentencing provision that was central to the plea
agreement, 18 U.S.C.  3553(f), commonly referred to in sentencing
parlance as the "safety valve," allows courts to sentence
defendants who have little or no prior criminal history "without
regard to any statutory minimum sentence" under certain
circumstances.  At the time of the July 18, 1997 Rule 11 hearing,
Hernandez's defense counsel, the Assistant United States Attorney
prosecuting the case, and the district court were all under the
impression that Hernandez was preliminarily eligible for sentencing
under the safety valve, meaning that his prison sentence could have
been as low as 30 months.  On the other hand, if Hernandez did not
receive the benefit of the safety valve provision, the crime to
which he was pleading guilty carried a mandatory minimum sentence
of 60 months.
 We can best explain the handling of the "safety valve"
provision at Hernandez's Rule 11 hearing on July 18, 1997 by
quoting extensively from the hearing:
   The Court: You have a plea agreement which I
 have examined.  The plea agreement says that
 you are pleading guilty to this drug
 conspiracy count.  It also spells out the
 penalties that we discussed earlier on in this
 colloquy.  It also says here that you're going
 to try to comply with the safety valve
 provisions of Guideline section 5(c)(1).2.  
 And if you do so then I will be able to
 sentence you without making reference to the
 statutory mandatory minimum term of
 imprisonment.  Do you understand that?

   The Defendant: I don't understand.  I don't
 understand.  I didn't understand that part.

   The Court: Have you heard about the safety
 valve provisions?

   Defense Counsel: You Honor, if I may?  His big
 concern is that you stated that there is a
 statutory minimum of five years.  And all the
 time he has been considering level nineteen
 which is thirty [months].

   The Court: Let me clarify that confusion that
 you have.  When I mentioned the five years
 statutory minimum term of imprisonment I
 mentioned it because I have an obligation to
 tell you about that. Do you understand that?

   The Defendant: I understand.

   The Court: Also, I have an obligation [to tell
 you] about the forty years which is the
 maximum.  Do you understand that?

   The Defendant: I do.

   The Court: But I also have an obligation to
 tell you that you can escape that and be
 sentenced without reference to that mandatory
 minimum if you comply with the safety valve
 provision of section 5(c)(1).2.  Do you
 understand that?

   The Defendant: I do.

   The Court: That requires that you sit down
 with an agent, tell them everything you know
 about this case.  And if you have no criminal
 record, if you have no criminal record and you
 were not involved with firearms and things of
 that sort, then I can give you the benefit of
 sentencing you without reference to the
 statutory minimum.  For example, to a level
 nineteen.  Do you understand that?

   The Defendant: I understand.

                          *   *   *
                                
   The Court: And if you have no criminal history
 your Guideline imprisonment range with a level
 nineteen will be thirty to thirty-seven
 months.  However, if you do not comply with
 the safety valve obligations that you have,
 that becomes a sixty month sentence.  Do you
 understand that?  So it is in your best
 interest to comply.

   The Defendant: Well, okay.  What I don't
 understand is I just signed for thirty months.  
 And what I don't understand is if after that
 they can give me sixty months.  I don't
 understand that.

   The Court: Let me explain to you. [Y]ou're not
 signing for thirty months.  You are expecting
 to be sentenced to thirty months.  And I hope
 that that will be the case.  Do you
 understand?  But you still have to meet with
 an agent, and you have to comply with the
 safety valve provision.  You will have to sit
 down with this agent and you will have to tell
 him this is what happened. . . .  The
 government will check that you have no
 criminal record.  Which you don't.  And then I
 will give you [the] benefits of the safety
 valve.  Do you understand that?

   The Defendant: I understand.

                          *   *   *

   The Court: Okay.  The government is going to
 recommend a thirty month sentence.  You
 understand that?

   The Defendant: Ah-ha.

   The Court: And the government expects that
 you will comply with the safety valve
 provision.  You understand?

   The Defendant: Right now they will offer the
 same thing to my codefendants, right?

   The Court: Let me say this.  Let me see if I
 can   let me open the book here.  For you to
 qualify for the safety valve you have to
 comply with five things.  Number one: No
 criminal record.  Do you have a criminal
 record?

   Defense Counsel: No, your Honor.  There is a
 Law fifty-four charges, but that's not     
 
   The Court: Let me change that.  You cannot
 have more than one point of criminal record.  
 It seems to me that you're okay in that
 sense.

(emphasis added).

 In fact, as discussed more fully below, at the time of
the Rule 11 hearing Hernandez was ineligible for the safety valve.  
In order to qualify for sentencing under the safety valve, a
defendant may "not have more than 1 criminal history point."  See
18 U.S.C.  3553(f)(1).  All the participants (i.e., the
prosecutor, the court, defense counsel and Hernandez) were aware
that Hernandez had one prior criminal conviction at the time of the
plea hearing.  In November of 1995, Hernandez pled guilty to one
count of simple assault in violation of Law 54 (Puerto Rico's
domestic violence statute).  On January 9, 1996, Hernandez was
sentenced to eighteen (18) months probation pursuant to his
conviction under Law 54.  All of the participants correctly
understood that this conviction gave Hernandez only one criminal
history point.  However, either they did not know or they did not
appreciate the significance of the fact that Hernandez had
committed the offense for which he was pleading guilty while on
probation for the Puerto Rico Law 54 conviction.  Under the
sentencing guidelines, this fact added two more points to
Hernandez's criminal history score, thereby disqualifying him from
the benefits of the safety valve.  See U.S.S.G.  4A1.1(d) ("Add 2
points [to the defendant's criminal history score] if the defendant
committed the instant offense while under any criminal justice
sentence, including probation . . . ."); see also 18 U.S.C.  
3553(f) (restricting sentencing under the safety valve to
defendants that "do[] not have more than 1 criminal history
point").  Therefore, at the time Hernandez negotiated his plea
bargain with the government and at the time he entered his plea of
guilty, there was no possibility that Hernandez could be sentenced
to anything less than 60 months, the statutory mandatory minimum
sentence for the crime to which Hernandez was pleading guilty.
 On October 17, 1997, Hernandez's former defense counsel
moved for leave to withdraw as counsel for the defendant citing
irreconcilable differences.  On October 19, 1997, Hernandez moved
pro se for dismissal of his counsel.  In addition, Hernandez
requested (1) a continuance of the sentencing hearing; (2)
appointment of new counsel; and (3) a hearing concerning whether
Hernandez had been adequately counseled as to the terms and
conditions of the plea agreement.  By margin order, the district
court appointed new counsel to represent Hernandez and continued
the sentencing hearing until January 1998.  By the time of
sentencing in January 1998, Hernandez was represented by different
counsel.  Hernandez's new counsel did not renew or otherwise pursue
Hernandez's motion for a hearing on the validity of the guilty
plea.
 The district court held a sentencing hearing on January
22, 1998.  Pursuant to the pre-sentence report, Hernandez was
assigned a criminal history score of three.  At sentencing,
Hernandez exhibited a lack of understanding about the reasons for
the unavailability of a thirty month sentence.  The court responded
that "we have already discussed this; that you were   that when I
took your plea, I do think that it was very carefully explained to
you, all the consequences of your plea.  You agree to that, that in
that sense that I did not misrepresent anything to you, correct?"  
Hernandez responded that he was "not very good at English," that
the interpreter was speaking very fast and that he "had already
signed [the plea agreement] when you talked to me about the safety
valve."  Later in the sentencing hearing, Hernandez's counsel
indicated Hernandez's belief that he had not been adequately
counseled "about the impact of [the Law 54] charge in the State
courts."  Despite this indication of a problem with Hernandez's
plea, and Hernandez's earlier pro se request for a hearing on
whether he had been adequately counseled about the terms and
conditions of his plea agreement, the district court made no
further inquiry into whether Hernandez had understood the
consequences of his guilty plea at the time that it was entered,
and proceeded to sentence Hernandez to the statutory minimum
sentence of 60 months incarceration.  Hernandez now appeals from
his conviction and sentence.   
                             II.
 Rule 11 of the Federal Rules of Criminal Procedure
governs the acceptance of guilty pleas to federal criminal
violations.  Pursuant to Rule 11, in order for a plea of guilty to
constitute a valid waiver of the defendant's right to trial, guilty
pleas must be knowing and voluntary: "Rule 11 was intended to
ensure that a defendant who pleads guilty does so with an
'understanding of the nature of the charge and the consequences of
his plea.'" United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir.
1995) (quoting McCarthy v. United States, 394 U.S. 459, 467
(1969)).  A breach of Rule 11 that "implicates one of the rule's
'core concerns' mandates that the plea be set aside."  United
States v. Medina-Silverio, 30 F.3d 1, 3 (1st Cir. 1994) (internal
quotations omitted).  In previous cases we have identified three
core concerns: "1) absence of coercion; 2) understanding of the
charges; and 3) knowledge of the consequences of the guilty plea."  
Cotal-Crespo, 47 F.3d at 4 (citing United States v. Allard, 926
F.2d 1237, 1244-45 (1st Cir. 1991)).  Rule 11 by its terms excuses
harmless errors, see Fed. R. Crim. P. 11(h), and focuses the
court's attention instead on "whether any particular defect in the
Rule 11 hearing affected the defendant's 'substantial rights.'"
United States v. Marrero-Rivera, 124 F.3d 342, 348 (1st Cir. 1997).  
In determining whether defendant's substantial rights were
abridged, we consider the totality of the circumstances to
determine "what was communicated by the trial court, and what
should reasonably have been understood by the defendant."  Cotal-
Crespo, 47 F.3d at 4.
 Despite the failure of Hernandez's new attorney to renew
explicitly at the sentencing hearing his client's request that the
district court examine Hernandez's understanding of the
consequences of his plea at the time of the Rule 11 hearing,
Hernandez has not waived this issue on appeal.  Contrary to most
allegations of error, "a Rule 11 challenge will not be deemed
waived upon a party's failure to raise it in the district court."  
United States v. Parra-Ibanez, 936 F.2d 588, 593 (1st Cir. 1991).  
Because of the important concerns protected by Rule 11, we "must
determine compliance with Rule 11, even if a claim of noncompliance
was never presented to the trial court."  Id. (citation omitted).  
However, in recognition of the limits of appellate review, we are
constrained to consider only the record that was created in the
district court in considering a Rule 11 challenge on direct appeal.  
See id.  Because Hernandez's appeal "can be decided wholly on the
basis of the formal record accumulated thus far . . . [Hernandez's]
Rule 11 challenge is properly before us," id. at 594, and we
consider it on the merits.
                             III.
 Hernandez alleges that he was misled by the prosecutor,
the court, and his own counsel at his Rule 11 hearing and thus his
guilty plea was not "given voluntarily and intelligently."  See
United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995).  On the
basis of our review of the Rule 11 hearing transcript, we agree.
 The prosecutor, the court and defense counsel believed
that Hernandez would be eligible for sentencing under the safety
valve, 18 U.S.C.  3553(f).  Indeed, in explaining the terms of the
plea to Hernandez, the court at two points affirmatively
represented to Hernandez that his criminal history made him
eligible for sentencing under the safety valve.  Although the
court's representations about the availability of the safety valve
were phrased conditionally several times, the court assumed that
Hernandez's criminal history was not a problem.  Instead, the court
used conditional language to caution Hernandez that in order to get
the benefit of the safety valve, he needed to truthfully and
completely describe his involvement in the conspiracy to government
agents.  The court was thus referring to a condition within
Hernandez's control when he told Hernandez that "it is in your best
interest to comply [with the conditions of 18 U.S.C.  3553(f)]."  
The court specifically pointed out to Hernandez more than once that
he would be obligated to de-brief government agents about his
involvement in the conspiracy in order to comply with the safety
valve.  If he did so, the court indicated, he would be eligible for
sentencing under the safety valve.
 In United States v. Gray, 63 F.3d 57 (1st Cir. 1995), we
faced an analogous situation.  When the district court, pursuant to
Rule 11, asked Gray whether he understood the consequences of his
proffered guilty plea, Gray responded, "Not exactly."  Id. at 60.  
In subsequently explaining Gray's potential sentence, "the court
mistakenly stated, 'The maximum punishment is ten years to life.'"
Id.  In fact, the mandatory minimum for the crime to which Gray was
pleading guilty was ten years; the court had no discretion to
impose a lower sentence.  Id.  We vacated Gray's conviction:
   We think that the substance of what was
 communicated to Gray, specifically the
 district court's incorrect and misleading
 explanation of the mandatory minimum sentence,
 could have led a reasonable person to
 misunderstand the consequences of his guilty
 plea in this context, thus implicating one of
 Rule 11's core concerns.

     Although the court's error is not a
 "total failure to address" one of Rule 11's
 core concerns, see Cotal-Crespo, 47 F.3d at 5,
 we cannot say with any certainty that Gray's
 reasonable misunderstanding of his sentence
 did not affect his substantial rights within
 the meaning of Rule 11. . . . It seems likely,
 at the very least, that if Gray had clearly
 and accurately understood the consequences of
 a guilty plea, he would have decided
 differently.  The court's error leading to
 Gray's misunderstanding therefore affected
 Gray's substantial rights, and Gray's guilty
 plea cannot be said to have been given
 voluntarily and intelligently.

Gray, 63 F.3d at 61.
 A similar result obtains in this case.  Hernandez was
clearly concerned with the length of his sentence before he pled
guilty.  He was told that he would be eligible for a lighter
sentence for which he was not eligible.  This misunderstanding
implicates one of Rule 11's core concerns (i.e., the defendant's
knowledge of the consequences of his plea).  See Cotal-Crespo, 47
F.3d at 4.  Hernandez's plea was unmistakably induced at least in
part by an inaccurate representation by the court about the
consequences of his plea, thereby affecting his substantial rights.  
His guilty plea must therefore be set aside.  See McCarthy v.
United States, 394 U.S. 459, 466 (1969) ("[I]f a defendant's guilty
plea is not equally voluntary and knowing, it has been obtained in
violation of due process and is therefore void."); see also United
States v. Gray, 63 F.3d 57 (1st Cir. 1995); Correale v. United
States, 479 F.2d 944 (1st Cir. 1973).   
 Accordingly, we vacate the judgment of conviction and the
sentence, set aside the guilty plea, and remand the case for
further proceedings consistent with this opinion.

</body>

</html>