UNITED STATES of America,
Plaintiff–Appellee,

v.

Joe Brent HERNDON, Defendant–
Appellant.

No. 93–8278
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1993.

E.G. Morris, Smith, Morris & Florey, Austin, TX, for defendant-appellant.

Richard L. Durbin, Jr., Asst. U.S. Atty. and James H. DeAtley, Acting U.S. Atty., San Antonio, TX, for plaintiff-appellee.

Before SMITH, BARKSDALE, and DeMOSS, Circuit Judges:

PER CURIAM:

Joe Brent Herndon ("Herndon") pleaded guilty, pursuant to a written plea agreement, to one count of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1).[1] Nothing in the written plea agreement speaks to whether conviction under Count one would carry a mandatory minimum sentence or of the maximum possible penalty provided by law for conviction under Count one. Likewise nothing in the written plea agreement indicates the guideline range which might be applicable to Count one. In addition to the written plea agreement, the government pre-

---

1. *Count One* of the indictment reads as follows: "Beginning in or about July, 1991 and continuing until August 5, 1991, in Hays County in the Western District of Texas and elsewhere, the Defendant, JOE BRENT HERNDON, unlawfully and knowingly manufactured marijuana, a Schedule I Controlled Substance, contrary to Title 21, United States Code, Section 841(a)(1)."

pared a statement of factual basis which Herndon and his counsel co-signed, evidencing that they had read the factual basis and that the "allegations contained in the factual basis are true and correct." Two of the sentences in the factual basis read as follows:

"The officers later executed a search warrant at the house. The search revealed *no less than fifty (50)* growing marijuana plants, ranging in size from one foot to nine feet tall." (emphasis added)

The underlined words are the essence of ambiguity because logically they constitute an agreement only as to what was not found, (i.e., any number of marijuana plants beginning with 49 and going down to zero); and leave open entirely the number which was actually found. Early on in Herndon's Rule 11 colloquy, this ambiguity surfaced when defense counsel indicated that there was a dispute as to the number of plants and that it was defendant's position, "that there were 50 or less plants." Immediately thereafter, the following dialogue appears in the Rule 11 transcript:

**THE COURT:** My recollection of your statement or the summary of the evidence was that it says no less than fifty marijuana plants.

**MR. PITTMAN** [prosecutor]: That's correct, Your Honor. That's what's in the signed factual basis in the case.

**THE COURT:** So, I suppose there could be fifty based upon that.

**MR. SPIVEY** [defense counsel]: That's my understanding.

**THE COURT:** All right. And that's—you agree with that summary then?

**MR. HERNDON** [the defendant]: Yes, sir, I do.

Later on, the trial judge advised the defendant that, "the maximum possible penalty under Count one is twenty years of imprisonment and a fine of $1,000,000." The defendant acknowledged that he understood that. At no other point in the Rule 11 hearing did the trial judge advise Herndon as to any mandatory minimum sentence which might be applicable to Count one, nor is there any dialogue in the Rule 11 transcript which mentions or discusses any possible guideline range or guideline sentence which might be applicable to Count one.

Following the Rule 11 hearing which occurred on November 12, 1992, the probation officer prepared his pre-sentence investigation report ("PSR") dated December 10, 1992. In his PSR, the probation officer recognized that Herndon was "adamant in his claim that there were less than 50 growing marijuana plants involved"; but, the probation officer relied upon the reports of the arresting officers that 110 plants had been seized at the time of Herndon's arrest. Relying upon the text at the end of the "Drug Quantity Table" (U.S.S.G. § 2D1.1(c)) instructing that when 50 or more marijuana plants are involved in the offense, "treat each plant as equivalent to one kilogram of marijuana," the probation officer came up with a base offense level of 26; and added a two-level increase for the firearms which were seized in the house which Herndon was occupying. The resulting level of 28 produced a guideline range of confinement between 78 and 97 months, since Herndon had no criminal history points which would move his sentence to a higher level. The probation officer cited as statutory provisions in paragraph 58 of the PSR that the controlling statutory provision was 21 U.S.C. § 841(b)(1)(C). However, if in truth and in fact 110 plants of marijuana are involved, the correct statutory authority for punishment of this offense would be Section 841(b)(1)(B)(vii) which applies to "100 or more marijuana plants" and provides for a minimum sentence of not less than 5 years and a maximum sentence of not more than 40 years. Consequently, the advice which the trial judge gave to the defendant at the time of his Rule 11 colloquy was incorrect in that the trial judge advised Herndon of a potential 20 year maximum, when in fact the maximum would be 40 years, and he failed completely to advise Herndon of the 5 year minimum sentence.

■ The government concedes in its brief that these mistakes and omissions by the trial court were errors under the requirements of Rule 11(c) Fed.R.Crim.P.; and that the determinative question on this appeal is whether or not such errors were "harmless" within the meaning of Rule 11(h) Fed.

R.Crim.P. as required by the en banc holding of this Court in *United States v. Johnson*, 1 F.3d 296 (5th Cir.1993) (en banc).

In making such harmless error determination, we utilize the following principles as described in *Johnson*.

A. The determination of harmless error is a fact sensitive inquiry and the results will depend upon the particular facts of each individual case; *Id.* at 302.

B. Application of the harmless error analysis should not result in "nullifying important Rule 11 safeguards"; and the kinds of Rule 11 violations which might be found to constitute harmless error on direct appeal "are fairly limited." *Id.* (quoting Advisory Committee notes to Rule 11).

C. In assessing harmlessness, we must resolve the issue "solely on the basis of the Rule 11 transcript *and* the other portions (e.g., sentencing hearing) of the limited record made in such cases"; but in considering "documentation that itself post-dates the plea hearing (such as the pre-sentence investigation report, objections thereto by the defendant and the transcript of the sentencing hearing), we will consider only those temporally relevant matters that are revealed in the record." *Id.*

D. The ultimate determination of harmlessness is "whether the error affects substantial rights"; and in making that determination, "we focus on whether his knowledge and comprehension of the full and correct information would have been likely to affect [the defendant's] willingness to plead guilty." *Id.*

Applying these principles from *Johnson* to the circumstances of this case, we have no difficulty in concluding that the failure of the trial judge to "inform the defendant of and determine that the defendant understands ... the mandatory minimum penalty provided by law" as required by Rule 11(c) was *not* harmless in this case. We arrive at that conclusion for the following reasons:

### I.

As mandated by *Johnson*, we have searched: (i) the transcript of the Rule 11 hearing, (ii) the plea agreement, (iii) the statement of factual basis, (iv) the presentence investigation report and objections thereto by the defendant, and (v) the transcript of the sentencing hearing; and have not been able to find any basis upon which we could reasonably conclude that the defendant was "aware of and understood" that there was a five (5) year minimum statutory sentence applicable to the count to which he was pleading guilty.

This distinguishes this case from the circumstances in *Johnson* itself, where the transcript of the Rule 11 colloquy clearly showed that Johnson was aware that the probable guideline sentence resulting from his conviction would have a minimum range of twenty (20) years, even though the trial court had failed to inform him of a mandatory statutory minimum of one (1) year applicable to one of the counts of which he was pleading guilty.

### II.

It is apparent from our review of the record in this case that there was controversy from the very beginning as to the ambiguous language in the statement of factual basis that "no less than fifty (50) growing marijuana plants" were involved in the charge. In our view, this ambiguity caused the trial judge to select the wrong subsection of 21 U.S.C. § 841(b) for the purpose of advising the defendant as to statutory minimums and maximums.[2]

---

2. As noted by the government in its brief, Section 841(b) of Title 21, United States Code, sets forth four ranges of imprisonment for violations of § 841(a) involving marijuana: (1) if less than 50 kilograms or 50 plants regardless of weight, the penalty is a term of imprisonment up to five years (§ 841(b)(1)(D)); (2) if 50 or more, but less than 100 kilograms or plants, the term of imprisonment is up to 20 years (§ 841(b)(1)(C)); (3) if 100 or more, but less than 1000 kilograms or plants, the term of imprisonment is at least five years up to a maximum of 40 years (§ 841(b)(1)(B)); and (4) if 1000 or more kilo-

Given that the original offense report in this case indicated that, "One hundred and Ten (110) growing marijuana plants" were taken into custody in this case, we are puzzled as to why the prosecution resorted to the ambiguous language which it used in the statement of factual basis, rather than specifying the particular number of plants indicated in the offense report, and then stood by silently at the Rule 11 hearing when the judge effectively construed the statement of factual basis as involving "Fifty (50) plants," and used that determination to select the penalty provision under § 841(b). We take this occasion to urge the prosecutor and defense counsel to use the written plea agreement; and the statement of factual basis, for the purpose of clarifying rather than obfuscating the consequences of the charge to which the defendant intends to plead guilty.

While we agree with the government's argument in this case that neither allegation nor proof of drug quantities is essential to conviction under § 841(a), there is absolutely no way to properly determine statutory minimum and maximum penalties under § 841(b) without appropriate knowledge as to the quantities involved. If the government chooses to play "hide the thimble" regarding drug quantities, as it did in this case, then we think it incumbent on the prosecution at the Rule 11 hearing to request the trial judge to advise the defendant as to all of the possible minimums and maximums of punishment under § 841(b) which could possibly be applicable as a result of appropriate determination of quantities using relevant conduct under the guidelines.

### III.

■ Finally, where the minimum mandatory sentence, of which the defendant was not informed, constitutes a substantial portion of the actual sentence ultimately determined to be applicable under the guidelines, we think there is a significant possibility that awareness of such minimum would have affected the defendant's decision to plead guilty. First of all, a grams or plants, the term of imprisonment is at

statutory minimum necessarily colors the evaluation by a defendant and his counsel of his potential sentence, because it inherently sets a minimum below which a sentence determined by the guidelines cannot go. More significantly, in drug cases, such as this one, awareness of a statutory minimum will, in and of itself, inform a defendant as to the gross ranges of drug quantities which the government contends may be involved; and if those quantities are in dispute, as they were here, a defendant might well conclude that rather than pleading guilty and facing a sentence based on a quantity which he disputes, he would just as soon have his day in court under a "not guilty" plea with a chance of getting off entirely. Other panels of this court have expressed similar sensitivity to the error of non-disclosure or mis-disclosure of mandatory minimums. *See U.S. v. Martirosian,* 967 F.2d 1036 (5th Cir.1992); and *U.S. v. Whyte,* 3 F.3d 129 (5th Cir. 1993).

The government argues two theories on which we should conclude that the Rule 11 errors in this case were harmless. First, the government contends that "on the facts of the instant case, the mandatory minimum penalty provided by statute had no effect on appellant's sentence." Whether the mandatory minimum had an effect on the sentence is not the question, however. The question is whether awareness of a mandatory minimum would have affected the defendant's decision to plead guilty.

· Secondly, the government cites several instances in the record which the government contends show that appellant "repeatedly persisted in his guilty plea and declined the district court's offer to withdraw the plea." We have reviewed each of these cited instances and decline to so interpret them. All of these instances occurred during the sentencing hearing, not the Rule 11 hearing, and none of the instances constitute any indication of what the defendant was "aware of or understood" regarding the existence of a statutory minimum sentence as of the "temporally relevant" time, i.e., the Rule 11 hear-

least ten years up to life (§ 841(b)(1)(A)).

ing.   Finally, none of the instances rise to the dignity of an occasion on which the defendant "knowingly and intelligently" waived the failure of the trial judge to comply with Rule 11(c).

For the foregoing reasons, we VACATE the conviction and sentence, and REMAND the case to the trial court for repleading.