# United States Court of Appeals
## For the First Circuit

No. 99-1899

UNITED STATES,
Appellee,

v.

JOSE SANTO a/k/a FEDERICO,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]
[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Torruella, Chief Judge,
Campbell, Senior Circuit Judge,
and Schwarzer,* Senior District Judge.

Jonathan R. Saxe with whom Twomey & Sisti Law Offices was on brief for appellant.
Michael J. Pelgro, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, James B. Farmer, Assistant United States Attorney, Chief, Criminal Division, Stephen P. Heymann, Assistant United States Attorney, Deputy Chief, Criminal Division, and Michael J. Pelgro, Assistant United States Attorney, were on brief for appellee.

_____

*Of the Northern District of California, sitting by designation.

September 15, 2000

**CAMPBELL, <u>Senior Circuit Judge</u>.**  Defendant-appellant Jose Santo pled guilty to drug conspiracy and other charges after being told -- incorrectly, as it turned out -- that he faced a statutory mandatory minimum sentence of only five years. Later, upon determining that Santo was responsible for more drugs than was initially contemplated, the district court sentenced him subject to the ten-year mandatory minimum applicable to the greater drug quantity.  Santo contends that the court's understatement of the mandatory minimum penalty rendered his guilty plea involuntary, as the error both violated an express provision of Fed. R. Crim. P. 11 requiring advice as to the mandatory minimum penalty provided by law and also affected his substantial rights.  <u>See</u> Fed. R. Crim. P. 11(c)(1) and (h).  We agree, and allow Santo to withdraw his plea.

## I.

On December 3, 1998, Santo and three co-defendants were charged with conspiracy to distribute heroin, 21 U.S.C. § 846, and the distribution of heroin, 21 U.S.C. § 841(a)(1).  Santo was also charged with making false statements to a federal law enforcement officer, 18 U.S.C. § 1001, and making false

-2-

statements in a passport application, 18 U.S.C. § 1542. Thereafter, Santo signed a plea agreement with the United States Attorney, in which he agreed to plead guilty to all the counts against him in the indictment and admitted that he was, in fact, guilty of each of these offenses.[1]

---

[1]The plea agreement was of the sort authorized by Fed. R. Crim. P. Rule 11(e)(1)(B), under which the government's recommendation or request contained in the agreement does not bind the court, and the defendant may not withdraw his plea should the court decline to accept the government's recommendation or request. See Fed. R. Crim. P. 11(e)(2).

A.        The plea agreement

The plea agreement included a statement of Santo's mandatory minimum and maximum penalties. Count One, the conspiracy charge, was said to have

> a maximum of 40 years and a mandatory minimum of 5 years, in federal prison without parole, to be followed by a term of supervised release of at least 4 years, a fine of up to $2,000,000, and a special assessment of $100,000.

The distribution counts were each said to provide, inter alia, for a maximum of twenty years imprisonment, and the false statement counts, inter alia, twenty years and five years respectively.

The plea agreement went on to announce that the parties "will take the following positions at sentencing under the United States Sentencing Guidelines":

> The parties agree to take the position in connection with the drug counts that Santo is accountable for at least 100 grams of heroin, that his Base Offense Level is 26 (100-400 grams of heroin), and the five year minimum mandatory provision is applicable.

After reference to an agreed four-level upward adjustment for being an organizer or leader under U.S.S.G. § 3B1.1(a), the parties agreed to take the position that the "safety valve" provision was inapplicable and that Santo's adjusted offense level on the drug counts was 30. The parties agreed to an

-4-

adjusted offense level of 10 on the two false statements counts, and to a possible three-level reduction for acceptance of responsibility under U.S.S.G. § 3B1.1, subject to certain conditions.

The plea agreement next contained a section entitled "Sentence Recommendation," which read as follows: "The U.S. Attorney takes no position at this time concerning his sentence recommendation before the district court . . . ." In this section the parties agreed there was no basis for departure from the range established by the sentencing guidelines, except possibly for substantial assistance under U.S.S.G. § 5K1.1. The plea agreement further provided:

> 7.  Court Not Bound By Agreement
>
> The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Santo faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Santo's plea will be tendered pursuant to Fed. R. Crim. P. 11(e)(1)(B). Santo may not withdraw his plea of guilty regardless of what sentence is imposed. Nor may Santo withdraw his plea because the U.S. probation office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties.

B.  The Rule 11 hearing

On April 22, 1999, the district court conducted a change of plea hearing pursuant to Fed. R. Crim. P. 11 for Santo and one of his co-defendants. The parties filed the abovementioned written plea agreement with the court. The district court explained the nature of the charges and the rights that Santo was giving up by pleading guilty. Santo, who participated in the hearing via an interpreter, responded that he understood.

Consistent with the plea agreement, the court told Santo that he faced a mandatory minimum sentence of five years' imprisonment and a maximum sentence of forty years:

> Now let's talk about what may happen here if you plead guilty. When Congress passes a law they pass a maximum possible sentence. And the maximum sentence here for the crime of distribution of heroin is twenty years in prison . . . On the conspiracy charges, because the government in your case, Mr. Santo, says more drugs are attributable to you, the maximum sentence is potentially –well, the maximum sentence is, the maximum, forty years in prison . . . and <u>I have to give you five years in prison, there's a mandatory minimum sentence.</u>

[Emphasis supplied.] The court made no mention of the possibility of a higher statutory mandatory minimum in the event that a greater quantity of drugs was attributed to Santo. Noting that Santo's other charges could be sentenced

consecutively, the court stated that it could add up all of his

charges to a maximum of 185 years, or life imprisonment.

> The court then turned to the sentencing guidelines:

> Now, I'll ask Mr. Pelgro [the Assistant
> United States Attorney] . . . what he thinks
> the range is in each case.  I turn to him
> not because he governs the range, I'll
> figure out what the range is, but I'll
> listen to him, I'll listen to your
> attorneys, I'll listen to you, I'll listen
> to the probation officer, but <u>you need to
> know that he thinks the range is because
> probably he's the person who is looking for
> the most severe sentence.</u>

[Emphasis supplied.]  The government responded: [W]e believe

that Mr. Santo will come out, or we think he'll come out at

total offense level 27 . . ."  The government went on to state

that the guideline sentencing range was 87 to 108 months

(approximately seven to nine years), based on a criminal history

category of III.  The court then addressed Santo:

> Now, Mr. Santo, listening to Mr. Pelgro, he
> says that the way he now calculates the
> sentencing guidelines, you're looking at a
> minimum 87 months in prison and a maximum
> 108 months.  Is that how you understand it?

> Mr. Santo: Yes.

Shortly thereafter, the court stated:

> In each case, gentlemen, you must understand
> that I am no part of the plea bargain; that
> I will impose the sentence I think is
> appropriate under the law.  I'm not agreeing
> to go along with anything.  I will follow
> the law and impose what I think is an

appropriate sentence. Do you understand that, Mr. Santo?

Mr. Santo: Yes.

Santo stated that his plea was based on no inducements other than the plea agreement. The district court found that Santo knowingly, intelligently, and voluntarily exercised his right to plead guilty. Before accepting Santo's plea, the court stated: "Understand, now, if you plead guilty there is no taking it back or starting over."

On or around June 28, 1999, the United States Probation Office provided Santo's counsel with a copy of the pre-sentence report (PSR) pursuant to Fed. R. Crim. P. 32(b)(6)(A). Probation found Santo responsible for 1000 to 6000 grams of heroin, rather than the 100 to 400 grams contemplated in the plea agreement and at the Rule 11 hearing. Pursuant to 21 U.S.C. §§ 841 and 846, these increased drug amounts raised Santo's mandatory penalties from five years minimum and forty years maximum to ten years minimum and life maximum. In addition, they raised Santo's offense level to 33. See U.S.S.G. § 1B1.3. Applying a criminal history category of III, probation recommended a sentence of 168 to 210 months, with a minimum sentence of ten years and a maximum of life imprisonment.[2] Santo

_____

[2]At first, the PSR set forth a minimum sentence of five years and a maximum of forty years. On July 27, 1999, that was

did not then file any objections to the PSR or move to withdraw his plea.

C.      The sentencing hearing

On July 27, 1999, the district court held a sentencing hearing. The court addressed the discrepancies between the PSR and the plea agreement and Rule 11 discussion:

> Let me put on the record the additional matter. I don't think this is going to impact the sentencing process as we go forward, but the record should be complete and the probation officers have appropriately advised me.
>
> Upon the investigation post plea of the probation department, it appears that the quantity of drugs involved warrants a statutory term of imprisonment of a minimum of ten years and a maximum of life. At the time of the plea, Mr. Santo was advised that the maximum sentence he could face, if he pleaded guilty, was 40 years in prison. Therefore, I state, so everyone is clear on it, if things eventuate such that justice requires a sentence of more than 40 years, without more, Mr. Santo will be entitled to withdraw his plea and get his case in order to stand for trial.

The court then grouped the various counts against Santo, applied the upward and downward adjustments, and stated that the sentencing range was 168 months to 210 months. The court asked the government and Santo's counsel if it had properly calculated

---

changed to a minimum sentence of ten years and a maximum of life imprisonment.

the sentence under the guidelines. Initially, Santo's counsel objected to the fact that the amount of drugs for which he was responsible had been increased since his change of plea:

> I have no problem with the calculations based on the amount that's estimated by probation to be attributable to Mr. Santo. The problem I have is that the plea agreement was based on accounting only 100 grams to Mr. Santo's activity. And his plea and all the discussions and negotiations were based on that level of a hundred grams which would have started him at level 26 and then done the adjustments. And that's why, again, I don't question the math, but I question the quantity that's attributed to him.

The district court acknowledged that a lesser drug quantity had been negotiated, but stated that "[u]nder a sentencing guidelines regime probation has done what it's supposed to do and has given me information that appears unchallenged, that the drug quantity is substantially greater, and I'm, I'm disposed to follow it."

> In response, Santo's counsel stated:
>
> Let me just, one issue I didn't – with respect to this changing of the minimum and maximum, I did address that earlier with my client and anticipating your Honor's ruling I told him that's probably what's going to happen so I'm not worried about that aspect of it. . . . So I know that it is not written in stone, that it's not something the defendant can count on, but as a practical matter that's basically what he was counting on was a range closer to that

> fully understanding that there's a lot of variables of things that won't be known.

The district court responded that it was bound by the sentencing guidelines and found that the drug quantities in the PSR were accurate. It noted that Santo had preserved his rights with respect to the court's rulings and findings.

The government stated that it felt "bound to recommend the low end of the guideline sentencing range, which is 168 months." Santo did not seek to withdraw his guilty plea, but rather asked to be sentenced at the low end of the range. The district court sentenced Santo to 168 months (fourteen years) incarceration.

## II.

On appeal, Santo seeks to withdraw his plea. He contends that the district court's understatement of the statutory mandatory minimum sentence (as five years, rather than the ultimately applicable ten years) violated Rule 11(c)(1)'s explicit requirement that the court advise the defendant of "the mandatory minimum penalty provided by law, if any." Santo further argues that the court's error affected his substantial rights.[3] See Fed. R. Crim. P. 11(h).

---

[3]In the alternative, Santiago seeks resentencing on the separate ground that the amount of drugs upon which his sentence was based was unsupported. Since we reverse on the first ground, we do not reach this point.

Before addressing these contentions, we note that Santo did not request to withdraw his guilty plea in the district court. This omission, however, is not necessarily fatal where a fundamental mistake in Rule 11 procedure is asserted.

> Ordinarily, we deem an issue not raised before the district court to be waived. We will, however, determine compliance with Rule 11, even if a claim of non-compliance was not presented in the district court, if the record is sufficiently developed, which is generally the case because of Rule 11(g)'s requirement that the district court make a complete record of the plea proceedings.

United States v. Noriega-Millan, 110 F.3d 162, 166 (1st Cir. 1997); see also United States v. McDonald, 121 F.3d 7, 10 (1st Cir. 1997).

This is not to say that a defendant's failure to seek withdrawal of his plea in the district court is immaterial. We have said, and reiterate, that a defendant who has not sought relief below "faces a high hurdle" on appeal, and must show that there was "a substantial defect in the Rule 11 proceeding itself." United States v. Miranda-Santiago, 96 F.3d 517, 522 (1st Cir. 1996); see also Fed. R. Crim. P. 11(h) (providing that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded").

A.      The district court's error

Fed. R. Crim. P. 11(c)(1) provides that before accepting a plea of guilty:

> the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) the nature of the charge to which the plea is offered, <u>the mandatory minimum penalty provided by law, if any</u>, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances . . .

(Emphasis supplied.)  Here, as to the most serious charge, drug conspiracy, the government stated unequivocally in the plea agreement that Santo faced a mandatory minimum sentence of five years and a forty year maximum.  The district court reiterated those minimum and maximum figures at the Rule 11 hearing, again without qualification or mention of the possibility of any higher minimums and maximums should larger drug quantities be found to be involved.

The problem the court faced was that the applicable mandatory minimum provided in the statute depended on the amount of heroin for which Santo was found responsible.  While the court was correct as to the mandatory minimum applicable to Santo under the then-assumed amounts, it was wrong as to the

-13-

mandatory minimum ultimately applicable given the subsequent increase in drug quantity. The court no doubt assumed that the government, if anyone, would know what amounts should be factored into the statutory equation. At the Rule 11 hearing, the district court based its unqualified statement to Santo of the statutory minimum and maximum on the drug quantity provided by the government (100 to 400 grams). As this court has noted, district courts often rely on the government's representations regarding facts material to the sentence, but there can be risk in so doing, as this case demonstrates:

> One might expect that whatever the complexity of the Sentencing Guidelines, it would be easy accurately to advise the defendant of the statutory penalties. But as this case shows, the statutory penalties themselves are sometimes complicated; the defendant may be charged with multiple counts; and the penalties may depend on information . . . that is not automatically available to the district judge at the time of the plea. Accordingly, district judges often rely heavily, although not exclusively, on the prosecutor to provide the court with a description of statutory penalties or at least to advise the court if it misstates the terms.

United States v. Raineri, 42 F.3d 36, 40 (1st Cir. 1994).

Where, as here, mandatory minimums and maximums depend on drug quantity and drug quantity attribution is not finally determined until after the plea process is completed, the court is obviously in a tricky position when it comes to being able to

-14-

accurately advise a defendant, as Rule 11 requires, of the mandatory minimum and maximum penalties faced.  See United States v. Padilla, 23 F.3d 1220, 1223 (7th Cir. 1994).  This lack of certainty, however, does not relieve the court of its Rule 11(c)(1) responsibility to correctly inform a defendant, insofar as is possible, of those mandatory minimum and maximum penalties applicable in his particular case.  See id.; see also United States v. Herndon, 7 F.3d 55, 58-59 (5th Cir. 1993).

The dissent contends that Rule 11's requirement was adequately met merely by informing Santo of the five-year mandatory minimum applicable to the lesser drug quantities recommended by the government in the plea agreement, even though the court later found greater quantities resulting in a mandatory ten-year minimum and sentenced  him accordingly.  However, advice as to a mandatory minimum that is no longer relevant can hardly achieve Rule 11's purpose, which is to advise a defendant of the actual consequences of his plea so that he can realistically decide whether to plead guilty.  See McDonald, 121 F.3d at 11-12.  Here, the rule governing Santo's plea specifically disallowed Santo from withdrawing the plea notwithstanding the court's rejection of the government's recommended drug quantities in favor of quantifies triggering a doubled mandatory minimum.  See Note 1, supra.  Thus, knowledge

-15-

only of the mandatory minimum attributable to quantities recommended by the government could not educate Santo as to the full array of possible consequences his plea might engender.

One way to ensure that a defendant is properly informed, in the present circumstances, would be to advise as to the different mandatory minimums and maximums that could apply, depending on the quantity of drugs later attributed to the defendant:

> [A] prudent district judge hearing a plea from a defendant charged under an indictment or information alleging a § 841(a) violation but containing no [or ambiguous] quantity allegation[s should] simply walk a defendant through the statutory minimum sentences prescribed in § 841(b) explaining that a mandatory minimum may be applicable and that the sentence will be based on the quantity of drugs found to have been involved in the offense with which the defendant is charged." It is not costly in time or effort to enumerate during the plea colloquy the several mandatory penalties potentially applicable when attributable drug quantities are uncertain.

Padilla, 23 F.3d at 1224 (quoting United States v. Watch, 7 F.3d 422, 429 (5th Cir. 1993)).

Here, the district court announced minimum and maximum penalties based exclusively on the drug quantity asserted at the time by the government. Thus the court stated, "I have to give you five years in prison, there's a mandatory minimum sentence." It did not inform Santo that the statutory mandatory minimum and

-16-

maximum sentences would change to ten years and life if Santo were found responsible for a greater quantity of heroin.[4] Hence, as events turned out, the district court erred in informing Santo of a mandatory minimum that was, in fact, only half as long as that under the drug quantity later determined. See Padilla, 23 F.3d at 1223; Herndon, 7 F.3d at 58-59.

We hold, therefore, that the court failed to comply with the express provisions of Rule 11(c)(1) when it incorrectly advised Santo as to the minimum and maximum penalties that applied in his case. See McDonald, 121 F.3d at 11 (court failed to mention mandatory minimum); United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995) (court stated that ten years was maximum sentence, when it in fact was mandatory minimum); United States v. Lopez-Pineda, 55 F.3d 693, 695-696 (1st Cir. 1995) (court failed to mention mandatory minimum).

B.      Impairment of substantial rights

Our determination that the district court erred in failing to inform Santo of the correct, higher mandatory minimum

---

[4]Although later in its colloquy the court was careful to instruct that it was not bound by the sentencing guidelines, no such cautionary statement accompanied its discussion of the statutory mandatory minimum. Santo could have reasonably believed, therefore, that while the contemplated guideline range of 87 to 108 months was subject to change depending on the court's findings, the mandatory minimum would always be five years.

applicable in his case does not end matters, however.  Fed. R. Crim. P. 11(h) provides: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."  A guilty plea should be set aside only for errors that implicate the "core concerns" of Rule 11, which include the defendant's knowledge of the consequences of the guilty plea.  See Noriega-Millan, 110 F.3d at 166; Gray, 63 F.3d at 60.  We review the totality of the circumstances surrounding Santo's Rule 11 hearing to ascertain whether his substantial rights were affected by the error.  See United States v. Cotal-Crespo, 47 F.3d 1, 4-5 (1st Cir. 1995).

Regarding the court's failure to tell Santo that he might be maximally sentenced to life imprisonment, rather than just forty years, the district court, on its own initiative, sought to correct that error at the sentencing hearing by stating that Santo could withdraw his plea if a sentence of more than forty years were found to be required.  Because Santo's actual sentence did not exceed fourteen years, the scenario mentioned by the court did not arise.  Santo does not contend on appeal that the court's Rule 11 misstatement concerning the potential maximum was, in light of what transpired at sentencing, other than harmless error.

The more difficult question is the impact of the misstated mandatory minimum of five years rather than ten years. At the Rule 11 hearing, as in the written plea agreement, the prosecution openly declared that Santo's probable guideline sentence was 87 to 108 months, or approximately seven to nine years. Such a sentence was compatible with a five-year mandatory minimum but would be barred by a ten-year mandatory minimum. While Santo was advised that the court was not bound by the government's proposed sentencing range, he received no intimation at the Rule 11 hearing that the 87 to 108 month range was too low to be statutorily lawful under the mandatory minimum that ultimately was found to apply in his case. Nor was he told that there was any possibility that a higher mandatory minimum might control. The question, then, is whether Santo can be said to have understood the consequences of his plea given the district court's failure to call to his attention, as Rule 11 requires, the mandatory minimum that actually came to apply in his case. We conclude that it is sufficiently likely that Santo misjudged the consequences of his plea in light of the court's misinformation so that he must be allowed to withdraw his plea.

The present situation is not unlike that in United States v. Hernandez-Wilson, 186 F.3d 1 (1st Cir. 1999). There, as here, the defendant was not advised that the government's

calculated sentence was legally unsustainable.  In <u>Hernandez-</u><u>Wilson</u>, the government recommended a thirty-month sentence on the condition that the defendant comply with the requirements of the "safety valve" provision, which would permit the court to sentence him below the mandatory minimum.  <u>See</u> <u>id.</u> at 2. Unbeknownst to both parties as well as the district court at the time the defendant entered his guilty plea, the safety valve provision was not available due to the defendant's criminal history; hence, he had no possibility of receiving a sentence less than the sixty-month mandatory minimum.  <u>See</u> <u>id.</u> at 4.  We held that the defendant could have reasonably misunderstood the consequences of his guilty plea, which affected his substantial rights.  We allowed him to withdraw his guilty plea despite his failure to raise the issue below.  <u>See</u> <u>id.</u> at 5.

The case of <u>Raineri</u>, 42 F.3d at 36, is also instructive, even though, there, the district court's error was found harmless.  In <u>Raineri</u>, the defendant was told that he faced potential imprisonment of thirty-five years and a maximum fine of $20,000.  The parties and the court were apparently unaware that the defendant's criminal history subjected him instead to a minimum sentence of twenty years and a maximum of forty-five years, plus a maximum fine of $25,000.  <u>See</u> <u>id.</u> at 40-41.  The district court later sentenced him to ten years'

imprisonment and ordered him to make restitution in the amount of $5988. See id. at 40. Hence, the sentence the defendant received (as well as the sentence discussed at the Rule 11 hearing) was shorter than the actual mandatory minimum. See id. at 42. This court concluded that the defendant's substantial rights were not impaired by the misinformation, as there was "no indication that the misinformation given to Raineri at the Rule 11 hearing led him to expect a lesser penalty than he actually received." Id.; see also McDonald, 121 F.3d at 11-12 (failure to state mandatory minimum did not affect defendant's substantial rights where guideline sentencing range outstripped applicable mandatory minimum and defendant could not have reasonably hoped for shorter sentence).

Here, Santo reasonably could have expected from the information given, including in particular the inaccurate five-year minimum, that he might receive a significantly lighter punishment than the fourteen-year sentence he eventually received. Unlike McDonald, the government calculated a sentence of 87 to 108 months at the Rule 11 hearing, well under the undisclosed mandatory minimum of ten years.[5] It is true that

---

[5]The government argues that the district court's error in this case should be considered harmless, as in McDonald, because Santo's sentence was calculated under the guidelines, without reference to the statutory mandatory minimum. We do not find this convincing. As Rule 11 implicitly recognizes, the

-21-

Santo would have no valid complaint to a longer guideline sentence based on a higher drug quantity, but he was entitled to know that a higher drug quantity might lead to a doubled mandatory minimum that would remove any possible discretion the court might have retained to give a sentence below ten years. The district court may have inadvertently further encouraged Santo's expectations of a shorter sentence by stating that "probably [the prosecutor]'s the person who is looking for the most severe sentence," suggesting that Santo might reasonably anticipate a sentence no greater than the one being discussed. In any case, there was no suggestion from the government or the court that an increase in drug quantity, besides affecting Santo's guideline range, would pose an insurmountable statutory bar to sentences within the range discussed at the Rule 11 hearing.

What occurred controverts the purpose behind Rule 11's requirement that the district court inform a defendant of, and determine that he understands, the applicable mandatory minimum

---

mandatory minimum may be relevant to the defendant's expectations regardless of the guideline sentencing range. See McDonald, 121 F.3d at 11-12; see also Noriega-Millan, 110 F.3d at 166. Moreover, the absence of prejudice in McDonald was supported by the fact that the guideline range exceeded the undisclosed mandatory minimum. As explained supra, this case differs in that the stated guideline range was one to three years shorter than the statutory mandatory minimum.

sentence. That purpose is "to ensure that the defendant is not induced to change his plea because of a totally unrealistic expectation as to how mild a sentence he might receive." McDonald, 121 F.3d at 11-12; see also Noriega-Millan, 110 F.3d at 166. The misinformation that the minimum sentence was only five years reasonably could have affected Santo's decision to change his plea to guilty. Cf. Hernandez-Wilson, 186 F.3d at 6; Gray, 63 F.3d at 61. Had he known that a ten-year mandatory minimum might apply, so as to preclude the sentencing range discussed at the Rule 11 hearing, his expectations might conceivably have been lessened, along with his willingness to plead. We conclude, therefore, that the district court's erroneous advice as to the mandatory minimum sentence affected Santo's substantial rights, and we hold that Santo must be permitted to withdraw his plea. See Hernandez-Wilson, 186 F.3d at 6; Gray, 63 F.3d at 61.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Dissent to follow.

**SCHWARZER, <u>Senior District Judge</u>,** dissenting.   I respectfully dissent.  This appeal presents two issues: (1) Did the district court fail to comply with Rule 11; and (2) if it did, did the error impair Santo's substantial rights.

(1)  Rule 11 states that "the court must . . . inform the defendant of . . . the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. . . ." Fed. R. Crim. P. 11(c)(1).  The district judge informed Santo at the plea hearing that the mandatory minimum sentence was five years.  He did so on the basis of the information provided in the plea agreement.  The agreement stated that the relevant Count One carried a mandatory minimum of five years. It further stated that the "parties agree to take the position in connection with the drug counts that Santo is accountable for at least 100 grams of heroin . . . and the five year minimum mandatory provision is applicable." Slip op. *(3).  Because it had no information raising the possibility of a higher minimum sentence, the court did what the rule required.

The majority holds that "the court failed to comply with the express provisions of Rule 11(c)(1) when it incorrectly advised Santo as to the minimum penalties that applied in his case."  Slip op. *(14).  In considering that holding, it is critical to appreciate what this case does and does not involve.

-24-

This is not a case in which, at the time of the plea, the drug quantity was undetermined, nor is this a case in which the judge failed altogether to advise the defendant of the applicable mandatory minimum. The "minimum penalties that applied in his case" as of the time of the Rule 11 colloquy were those that applied to the drug quantity on which defendant and the government had agreed in the plea bargain that was before the court when it took the plea. Slip op. *(3). That the Probation Department subsequently increased the drug quantity attributed to Santo, recommending a ten-year mandatory minimum, does not retroactively infect what the district court did with error.

The majority treats this as a case in which the drug quantity attribution is not finally determined until after the plea process is completed. Slip op. *(12). In such a case of "lack of certainty," the district court must inform the defendant of the different mandatory maximums and minimums that could apply. Slip op. *(13). The majority quotes from <u>United States</u> v. <u>Watch</u>, 7 F.3d 422 (5th Cir. 1993), in which the court said that "a prudent district judge hearing a plea from a defendant charged under an indictment or information alleging a § 841(a) violation but <u>containing no quantity allegation</u> may simply walk a defendant through the statutory minimum sentences prescribed in § 841(b) explaining that a mandatory minimum may

-25-

be applicable and that the sentence will be based on the quantity of drugs [attributed to the defendant]." Id. at 429 (emphasis added). In the instant case, of course, the government had informed the court at the plea hearing of the quantity attributed to defendant. And the court's statement in Watch is dictum because the conviction was vacated on the ground that the court did not inform defendant of any mandatory minimum sentence. See id. at 428 n.5. Similarly, in United States v. Herndon, 7 F.3d 55 (5th Cir. 1993), and United States v. Padilla, 23 F.3d 1220 (7th Cir. 1994), reiterating the Watch dictum, the convictions were reversed because the court had failed to inform the defendant of any applicable mandatory minimum sentence. See Herndon, 7 F.3d at 56; Padilla, 23 F.3d at 1222 n.2.

But this is not such a case. Here, the drug quantities attributed to Santo had been determined by the plea agreement. A careful and reasonable district judge cannot be expected to warn the defendant that the Probation Department might change its mind later and report a larger drug quantity at sentencing. What the district court does at the Rule 11 hearing must be judged, not with the benefit of hindsight but by the state of affairs at the time. To require the district court in a case such as the one before us to inform a defendant of all the different mandatory minimums and maximums not only is not

-26-

required by Rule 11 but also would seem to confuse rather than help the defendant.

There is no authority for the proposition that the district court's failure to inform a defendant that a greater quantity of drugs might be attributed to him at sentencing than what the government had committed to in the plea agreement, bringing into play higher mandatory minimums, constitutes reversible error, nor can such a requirement be read into Rule 11(c)(1).

Indeed, to require district judges to inform defendants of all the different mandatory minimums will undermine the purpose of Rule 11(c) to ensure defendants will make <u>informed</u> decisions. It will also work to the prejudice of future defendants (even if it helps Santo in this case). That is because a defendant in Santo's position, who entered a plea in reliance on the plea agreement, would have a basis for moving to withdraw his plea at sentencing if the PSR at that point increased the drug quantity over what the government had represented in the agreement--not because the court is bound by the sentence contemplated by the agreement (which it is not under Rule 11(e)(1)(C)) but because the government has established the factual basis for the plea. If, on the other hand, a defendant at the plea colloquy is told that

notwithstanding the terms of his plea agreement, a greater minimum sentence may apply than what the agreement provided for, he has no ground for complaint if the PSR later states a drug quantity exceeding that specified in the plea bargain.

(2) Assuming nonetheless that the district court erred, the question is whether the error impaired Santo's substantial rights. The majority holds that "it is sufficiently likely that Santo misjudged the consequences of his plea in light of the court's misinformation so that he must be allowed to withdraw his plea." Slip op. *(16). As noted above, the information Santo received at the time of the plea was correct; it was only by reason of a subsequent unforeseen development that the factors controlling his sentence changed. In any event, United States v. McDonald, 121 F.3d 7 (1st Cir. 1997), is indistinguishable from the instant case. The court there held:

> In the case at hand, the error did not impair the appellant's substantial rights. The court imposed a sentence of 135 months- fifteen months longer than the mandatory minimum-and calculated that sentence without any reference to the mandatory minimum. It is, therefore, readily apparent that because the guideline sentencing range (at its nadir) outstripped the mandatory minimum, the latter had no relevance to, and no actual effect upon, the appellant's sentence. Consequently, the district court's failure to apprise the appellant of the mandatory minimum was an error that did no discernible harm.

Id. at 11. So here, the district court performed the guideline calculation without reference to the mandatory minimum, arriving

-28-

at an offense level of 33 which, given Santo's criminal history category III, resulted in a guideline range of 168-210 months. As in McDonald, the bottom of the range "outstripped" the ten-year mandatory minimum.

The majority notes that at the plea hearing, the government, in response to the court's question, estimated a sentencing guideline range that did not outstrip the ten-year mandatory minimum. Slip op. *(18 n.5). McDonald does not require reversal on those facts. McDonald is silent on whether any sentencing guideline range was mentioned at the Rule 11 plea colloquy; rather, it turned on the guideline range calculated by the judge at sentencing with the aid of the parole officer's PSR recommendation, and that range exceeded the mandatory minimum. McDonald holds that failure to inform the defendant of the applicable mandatory minimum at the Rule 11 hearing does not impair his substantial rights where that minimum was below the applicable sentencing guideline range.

To sum up, Santo may have been unfairly treated when he was ambushed by a revised PSR at the sentencing hearing. He may well have been entitled to withdraw his plea had he asked. That he failed to do so, however, does not make what the district court did reversible error.

For these reasons, I would affirm the judgment.