DeShawn WILLIAMS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 00–1687.

United States Court of Appeals, Sixth Circuit.

Sept. 25, 2002.

Before RYAN and BOGGS, Circuit Judges, and HAYNES, District Judge.*

## OPINION

HAYNES, District Judge.

Appellant–Defendant DeShawn Williams appeals his convictions for bank robbery and use of a weapon during a crime of violence. Williams pled guilty to these offenses, but challenges his plea on appeal as involuntary for the district court's misstatement of the maximum sentence for his weapon conviction at the time of his guilty plea. We **AFFIRM** the district court's judgment because Williams' sentence was within the range permitted by law, as stat-

* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

ed by the district court at the plea proceeding and prior to sentencing, the defendant was informed of the correct minimum sentence, but did not move to withdraw his plea.

## I. BACKGROUND

On September 29, 1999, Williams was charged by indictment with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371; two counts of armed bank robbery, in violation of 18 U.S.C. § 2113; one count of possession and use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). All charges stem from armed robberies of a bank and a credit union in Vassor and Richville, Michigan occurring on July 14, 1999 and August 25, 1999, respectively.

On January 11, 2000, the Defendant executed a plea agreement under which he agreed to plead guilty to armed bank robbery and possession and use of a firearm in furtherance of a crime of violence, counts three and four, respectively. Under the plea agreement, all other charges were to be dismissed. The plea agreement, however, expressly provided that Williams would be sentenced as if he had been convicted of both armed robbery charges. *Id.* The government agreed to recommend a three-level sentencing reduction. For the actual sentence to be imposed, the plea agreement stated that "any sentence shall not exceed the mid-point of the sentencing guideline range that the court finds to be applicable." Attached to the plea agreement were the government's guideline worksheets that set forth the offense level, criminal history, and other guideline adjustments as well as yielded an estimated guideline range of 77 to 96 months for the armed robbery offense.

For the firearm count, the worksheet listed the statutory maximum as "60 months." Government's estimated total sentencing range for both offenses was 137 to 156 months.

At the February 8, 2000 plea hearing, the district court informed the Defendant that the maximum sentence for the armed robbery count was 25 years and the firearm count was a "minimum of five years consecutive," for a total maximum sentence of 360 months. Government's counsel had advised the district court that the maximum sentence on the weapons offense was 60 months consecutive to the armed robbery sentence.

During the plea hearing, the district court apparently sensed the Defendant's hesitation in submitting his guilty plea. The district court explained to the Defendant that if he were convicted at trial, his sentence could not be lower than provided in his plea agreement and he would lose his reduction for acceptance of responsibility. After the district court's explanation, Williams stated, "I want to plead guilty." According to the plea hearing transcript, before the district court required any testimony on the factual circumstances of his use of the weapon during the robbery, the district court informed Williams of the 60 months minimum during the colloquy on his personal history and competence. In response to the district court's questions on the particulars of the robbery, Williams stated only that he had an air-powered pistol that looked like a real gun. In fact, Williams told the district court for the credit union robbery, "I didn't have it pointed at anyone" ... "I just had it up" with a "sock over it," but the tellers "could see it." For the bank robbery, Williams had a "33 gun" or air-powered pistol, his co-defendant had a real weapon for both robberies, but Williams did not supply that weapon. The Government accepted

Williams's statement as the facts supported the plea.

In the presentence report distributed on April 7, 2000, the probation officer determined the sentence for the weapon offense to be 84 months, contrary to the 60–month minimum sentence in the plea agreement. This difference resulted because the probation officer described Williams's conduct during the offense involving the bank robbery as follows: "At one point during the robbery, MR. WILLIAMS accused one of the tellers of setting off an alarm, which she denied. He then threatened to kill everyone in the bank and began to 'waive [sic] the handgun' towards both tellers." Thus, the probation officer defined the guideline range as 161 to 180 months, not 137 to 156 months as reflected in the plea agreement. Prior to sentencing, Government's counsel disclosed the error in the plea agreement's statement of the maximum sentence for the Section 924(c) offense in a letter to Williams' counsel. At the sentencing hearing, Williams' counsel characterized Government counsel's mistake as "harmless error."

At the sentencing hearing on June 6, 2000, the Defendant acknowledged his receipt and review of the presentence report, but did not object to the probation officer's proposed sentence range. In response to the district court's questioning at sentencing, Williams stated that he did not have any comments on the report. The Court then sentenced the Defendant to 86 months for count three, the armed bank robbery, and 84 months for count four, the use of a weapon, for a total sentence of 170 months. Consistent with the plea agreement, this sentence is slightly less than the mid-point of the guideline range determined by the district court. A timely notice of appeal was filed on June 15, 2000.

In his first challenge, Williams argues that his guilty plea was involuntary because he was incorrectly informed of the maximum sentence that he faced on the firearm charge. The Government argues that at his plea hearing Williams was informed that he faced a possible 25–year sentence on the armed robbery charge and a minimum 5–year consecutive sentence on the carrying and use of a firearm during a crime of violence. Because Williams was aware at the time of his plea that he faced the possibility of a 30–year or 360–month sentence, the government contends that the 170–month sentence Williams actually received is markedly less than the district court's advice on the maximum sentence that the law permitted. Thus, the government contends that Williams' substantial rights were not affected by any inaccurate information he received at the guilty plea proceeding on the maximum sentence for the weapons charge.

## II. ANALYSIS

Fed.R.Crim.P. 11(c) requires that in the submission of a guilty plea, the district court must inform the defendant of the "the maximum possible penalty provided by law." The purpose of this rule is "to ensure that the defendant is not induced to change his plea because of a totally unrealistic expectation as to how mild a sentence he might receive." *United States v. McDonald,* 121 F.3d 7, 11–12 (1st Cir.1997). Rule 11(c), however, must be read in conjunction with Fed.R.Crim.P. 11(h) that "any variance from the procedures required by this Rule which does not affect substantial rights shall be disregarded." A district court's failure to follow Rule 11's core requirements during a plea proceeding may require reversal of the plea. *United States v. Lowery,* 60 F.3d 1199 (6th Cir.1995). Non-compliance with Rule 11 in plea procedures does not constitute reversible error unless the error "affect[s] substantial rights." *United States v. Syal,*

963 F.2d 900, 906 (6th Cir.1992). *Accord United States v. Bashara*, 27 F.3d 1174, 1179–80 (6th Cir.1994). In deciding this issue, we must determine whether "it is likely that [the defendant] misjudged the consequences of his plea in light of the court's misinformation so that he must be allowed to withdraw his plea." *United States v. Santo*, 225 F.3d 92, 100 (1st Cir. 2000).

A claim for the district court's failure to inform of the minimum and maximum penalties cannot be considered on appeal if the claim were not made in the district court, *United States v. Ferguson*, 132 F.3d 34, 1997 WL 764471, *3 (6th Cir.1997), unless the defendant can demonstrate plain error under Fed.R.Crim.P. 52(b) that requires a showing: "(1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir.1998) (citation omitted).

For a guilty plea to be voluntary, the Defendant should be made aware of the maximum sentence. *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.1994). "The mere fact that the defendant does not know at the time of his guilty plea, the exact sentence that he will receive does not [necessarily] mean that the plea was entered into unknowingly." *United States v. Malcom*, 114 F.3d 1190, 1997 WL 311416, at *7 (6th Cir.1997)(unpublished) (citing *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir.1990)). An incorrect estimate of the

ultimate sentence by the parties does not serve as a basis to conclude that the plea was not knowingly and intelligently made. *United States v. Stephens*, 906 F.2d 251, 253–54 (6th Cir.1990). Yet, in *United States v. Walsh*, 733 F.2d 31, 34 (6th Cir. 1984), we overturned a defendant's guilty plea, holding that the defendant "suffered identifiable prejudice because the sentence imposed exceeded the maximum sentence he was promised he would receive."

■ Here, the written plea agreement clearly provides that the statutory minimum for Williams' weapon violation was "5 years." At the plea hearing, the district court informed the Defendant that the statutory range for this offense is 5 years. The district court's statement was based upon the assistant United States Attorney's representation to the court that the minimum range for the offense was "60 months." The district court informed Williams that the estimated sentencing range for his offenses, or "the potential time you face is 137 to 156 months." This range was based upon a sentencing range of 77 to 96 months for the armed robbery charge with a consecutive 60 month sentence on the firearm charge.

This difference in the maximum sentences for the weapons charge arises from the additional facts set forth in the presentence report that were not presented at the plea colloquy. Under 18 U.S.C. § 924(c)(1)(A)(i), the possession of a firearm in furtherance of a crime of violence or drug trafficking carries a maximum penalty of five years. Yet, "if the firearm is brandished,"[1] 18 U.S.C. § 924(c)(1)(A)(ii)

---

1. At the time of Williams's his conviction and the presentence report the sentencing guidelines defined brandishing as "both pointing a firearm and pointing it in a threatening manner." *United States v. Moerman*, 233 F.3d 379, 380 (6th Cir.2000). As of November 1, 2000, the definition of brandishing was re-

vised to include the mere display of a weapon is sufficient, i.e., "that all or part of the weapon was displayed or the presence of the weapon was made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dan-

imposes a sentence of "not less than 7 years." In a word, the evidence at the plea hearing did not reflect any brandishing of the weapon by Williams. The presentence report first disclosed the facts of brandishing, *i.e.*, that Williams waved the pistol at the bank tellers. This latter fact would constitute brandishing to render applicable the 7 years mandatory consecutive under Section 924(c)(1)(A)(ii).

In *United States v. Ospina*, 18 F.3d 1332 (6th Cir.1994), we cited approvingly *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 210 (9th Cir.1988), and noted that "a district court's failure to comply with Rule 11(c)(1) in understating the maximum penalty was harmless because the defendant knew he could be sentenced to a term as long as that which he received." 18 F.3d at 1334 (citing *Sanclemente–Bejarano* ). In *United States v. Foreman*, 894 F.2d 1337, 1990 WL 7944 *3 (6th Cir.1990), we stated that ("[e]ven if misinformed about the maximum possible sentence, a defendant's plea is not to be set aside as involuntary if he receives a sentence less than the law permitted or less than the defendant was informed the court could impose") (citation omitted).

For his sentence, Williams was not promised a specific sentence as in *Walsh;* rather, the plea agreement was for a sentence at the mid-point range of the guideline range, as determined by the district court. This is the sentence for which Williams bargained and actually received. Moreover, "when a defendant is told he will receive the sentence he agreed upon with the government and does in fact receive that sentence, the court's failure to advise the defendant of the minimum or maximum penalties provided by law is

harmless error." *Ferguson,* 1997 WL 764471 at *5 (citation omitted).

As applied here, the district court informed the defendant that the law allowed a maximum sentence of 360 months on both counts. To be sure, the district court informed Williams, based on government counsel's representations, that the estimated guideline range was 137 to 156 months, a figure that was based upon counsel's estimate. "The court no doubt assumed that the government, if anyone, would know what amounts should be factored into the statutory equation." *United States v. Santo,* 225 F.3d 92, 98 (1st Cir. 2000). Counsel's erroneous estimate of the guideline range is not grounds to set aside the plea agreement. *Stephens,* 906 F.2d at 253–54. Because the 170–month sentence is within the sentence provided by the criminal statutes for bank robbery and use of a weapon during a crime of violence, we conclude that Williams's substantial rights were not violated by the Rule 11(c) error on the weapons charge. In such circumstances, "[s]ubstantial rights may not be affected when a defendant is informed of the maximum penalty, and that penalty markedly exceeds the penalty the defendant received . . . ." *Syal,* 963 F.2d at 906. Where there has been a misstatement of the applicable sentences in a Rule 11 colloquy, courts have found substantial prejudice for misstatement of mandatory minimum sentences, *Santo,* 225 F.3d at 99 and authorities cited therein, as well as where the misstatement involved a "significantly lighter punishment than the [actual] sentence he eventually received." *Id.* at 100.

On the voluntariness issue, Williams was aware of his counsel's earlier error on the maximum sentence for the weapons charge

---

gerous weapon does not have to be directly visible, the weapon must be present." *Id.* at

382 (Norris, J. dissenting) (*quoting* U.S.S.G. § 1B1.1, comment. (n. 1(c) (2000))).

when he received the presentence report.[2] Despite his review of that report, Williams did not move to withdraw his plea. While the failure to move to withdraw may not be determinative, where there is a failure to do so, "a defendant ... faces a 'high hurdle' on appeal." *Santo*, 225 F.3d at 97. At his sentencing hearing, Williams admitted his review of the presentence report. Further, in response to the district court's questioning about the report, Williams responded that he had no comment. These cumulative circumstances undermine Williams's contention that his plea was involuntary.

■ The defendant next argues that the government's error on the maximum sentence for the weapons charge, as reflected in the worksheets attached to the plea agreement, breached the plea agreement. Under the principle of "[f]undamental fairness, ... courts will enforce promises made during the plea bargaining process that induce a criminal defendant to waive his constitutional rights and plead guilty." *United States v. Robison*, 924 F.2d 612, 613 (6th Cir.1991). Generally, "once the district court accepts the plea bargain, it is bound by the bargain." *United States v. Mandell*, 905 F.2d 970, 972 (6th Cir.1990) (citing *United States v. Holman*, 728 F.2d 809, 813 (6th Cir.1984)). The district court is bound by the terms of the plea agreement as of the date of the plea hearing. With a plea agreement, "the trial court should hold the government to 'a greater degree of responsibility than the defendant ... for imprecisions or ambiguities in ... plea agreements.'" *United States v. Wells*, 211 F.3d 988, 995 (6th Cir.2000) (quoting *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir.1992)). If the Government fails to honor its agreement, the Court can order specific performance of the agreement. *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir.1994). "In determining whether a plea agreement has been broken, courts look to what was reasonably understood by the defendant when he entered his plea of guilty." *United States v. Carr*, 170 F.3d 572, 575 (6th Cir.1999).

Upon review of the plea agreement and the entire record, the Court concludes that at his guilty plea proceeding, Williams understood that the minimum sentence for the weapons offense was 60 months. Yet as to his actual sentence, the plea agreement provided and the district court told the defendant that the court would determine the actual sentence based upon the "guideline range the court finds to be applicable." The government did not make a specific promise as to what the sentence would be beyond the mid-point of the guideline range as determined by the district court. We do not consider the government counsel's error on the minimum sentence on the § 924(c) charge to constitute a material breach of the agreement, given the maximum sentences for both offenses, 360 months, and the actual sentence Williams received, 170 months.

**2.** Because the indictment charged Williams with "brandishing" the weapon, the error arose occurred from the parties plea agreement that misstated the applicable minimum sentence by stating 5 years rather than, "not less than 7 years" for brandishing a weapon. Given that the maximum sentence can be affected by the particular facts of the offense, as here, a preferable practice may be to have the government's case agent "read into the record the proof that would have been presented if the case had gone to trial." *Ferguson*, 1997 WL 764471 at *1. Another procedure is "to advise [the defendant] as to the different mandatory minimums and maximums that could apply" depending upon the facts of the case. *Santo*, 225 F.3d at 99 (citing *United States v. Padilla*, 23 F.3d 1220, 1224 (7th Cir.1994).)

■ Williams' final argument is that his plea should be vacated due to the district court's participation in the plea process. The defendant notes that at the plea proceeding, the district court sensed his hesitation to plead guilty and instead of granting him time to confer with his counsel, the district court interjected itself into the plea process. Specifically, the district court stated: "Do you know that if you are convicted, this is not going to get any lower?" The government responds that the district court did not participate in the plea negotiation process, but merely told the Defendant that if he went to trial and was convicted, he would lose his reduction for acceptance of responsibility, a fact the Defendant already knew and had discussed with his attorney.

In *United States v. Barrett*, 982 F.2d 193 (6th Cir.1992), we held that a district court's participation in the plea process is inherently coercive, such as where the district court attempts to facilitate a plea or to state the court's desire for a plea agreement. We conclude that the district judge's comments here did not constitute participation and were not coercive. After the comments, the district judge confirmed that Williams wanted to plead guilty, and made sure the Defendant had discussed these issues with his attorney, was satisfied with his attorney's representation, and explained that Williams was waiving his right to a jury trial by pleading guilty. Informing the Defendant about the effect of his decisions is not impermissible participation in the plea negotiation process. Similarly, informing the Defendant of the positive and negative effects of pleading guilty is not coercive and does not constitute impermissible court participation in the plea negotiation process. Rather, such comments ensure that the Defendant has been made fully aware of the effects of his decision.

## III. CONCLUSION

For these reasons, we **AFFIRM** the district court's judgment.